UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------------------X

101 FROST STREET ASSOCIATES, L.P.; NEXT
MILLENNIUM REALTY, LLC,

                                        Plaintiffs,


                    -against-

UNITED STATES ATOMIC ENERGY COMMISSION;                          COMPLAINT
UNITED STATES NUCLEAR REGULATORY COMMISSON, as
Successor to the United States Atomic Energy Commission;          Index No.
UNITED STATES DEPARTMENT OF DEFENSE; VERIZON
NEW YORK, INC., as successor to GTE Operations Support
Incorporated, GTE Corporation, GTE Sylvania Incorporated,
Verizon Inc., Verizon Communications, Inc., Sylvania Electrical
Products Incorporated, and General Telephone and Electric Corp.;
GTE OPERATIONS SUPPORT INCORPORATED;
GTE INCORPORATED; GTE SYLVANIA INCORPORATED;
SYLVANIA ELECTRIC PRODUCTS INCORPORATED;
VISHAY INTERTECHNOLOGY, INC., as successor to Vishay
General Semiconductor, Inc., General Semiconductor, Inc., and
General Instruments Corporation; VISHAY GENERAL
SEMICONDUCTOR, INC.; GENERAL SEMICONDUCTOR, INC.;
GENERAL INSTRUMENTS CORPORATION; VISHAY MIC
TECHNOLOGY, INC.; SULZER METCO (US) INC; MARVEX
FINISHING & PROCESSING CORPORATION;
ALLARD INSTRUMENTS CORP, a division of Applied
Fluidics, Inc.; APPLIED FLUIDICS, INC.; GULF WESTERN
INDUSTRIES INCORPORATED; GULF & WESTERN
MANUFACTURING COMPANY; NAT BASSEN TEXTILES, INC.;
PHYSIO CHEM CORP.; BRONCO BALTIMORE, INC.;
UNICORD, INC.; KLEARTONE TRANSPARENT PRODUCTS, INC.

                                        Defendants.

-----------------------------------------------------------------------------------X

Plaintiffs, Next Millennium Realty, LLC, and 101 Frost Street Associates, LP. (collectively, "Frost Street Parties" or "Plaintiffs") by their attorneys Kevin Maldonado and Partners, LLC., as and for their Complaint against Defendants, hereby allege as follows:

## NATURE OF ACTION

1)      This is an action under the Comprehensive Environmental Response Compensation and Liability Act, 42 U.S.C. Section 9601 et seq. ("CERCLA") for contribution and indemnification for past and future response costs under Sections 9607 and 9613(f)(3)(B) and a declaratory judgment under Sections 9607 and 9613(g)(2) holding defendants jointly and severally liable for future response costs to be incurred by the plaintiffs at the Sites (the "CERCLA Claims").  Plaintiffs' pendent claim for indemnification is pursuant to New York State Common Law (the "Pendent Claim").

## JURSIDICTION

2)       This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337 and 1343 as there is a federal question presented in the CERCLA Claims, and 42 U.S.C. §§ 9607 and 9613.

3)      The facts giving rise to the claims in this action occurred in the County of Nassau and State of New York, and within the jurisdiction of the United States District Court for the Eastern District of New York.  The parties reside within the jurisdiction of the United States District Court for the Eastern District of New York.

4)      The Pendent Claim is derived from a common nucleus of operative facts as the CERCLA Claims and the Court may exercise its pendent jurisdiction over the Pendent Claim.

## INTRODUCTION/FACTUAL ALLEGATIONS

5)      The New Cassel Industrial Area ("NCIA") is an industrial and commercial manufacturing area located in the Town of North Hempstead, County of Nassau, State of New York.  The New York State Department of Environmental Conservation ("NYSDEC"), in consultation with the New York State Department of Health, has classified thirteen specific properties located within the NCIA as Class 2 Hazardous Waste Sites.  Plaintiffs have entered into three Orders on Consent with the NYSDEC for the remediation of three of the thirteen NCIA sites, under the Index Numbers W-I 0799-00-05, W-I 0799-00-06 and W-I 0799-00-07 (the "Consent Orders").  The Consent Orders require the plaintiffs to conduct the remediation of the soil, and shallow groundwater on the 89 Frost Street Site ("89 Frost Street"), the Former Applied Fluidics Site ("770 Main Street") and the Former Autoline Site ("101 Frost Street") (collectively, the "Frost Street Sites"), down to a depth of 165 feet below ground surface ("bgs") ("NYSDEC On Site Shallow Remediation"). The Consent Orders also required the Plaintiffs to pay substantial sums to the NYSDEC for historic costs incurred by the NYSDEC and other governmental entities or governmental agents. The Plaintiffs have incurred costs, and continue to incur costs, remediating the Frost Street Sites pursuant to the terms of the Consent Orders and have paid the NYSDEC oversight costs (collectively, "NYSDEC Shallow Costs").

6)      To date, the Frost Street Parties have incurred in excess of $12,000,000 in implementing and maintaining the remedy of the Frost Street Sites as required by the Consent Orders.

7)      On December 8, 2016, the Consent Orders were modified and consolidated into a single Modified Consent Order ("Modified Consent Order").  The Modified Consent Order obligates Plaintiffs to continue the shallow remediation of the Frost Street Properties as required

3

in the original Consent Orders. Additionally, the Modified Consent Order requires the Plaintiffs to conduct the remediation of the deep groundwater under the Frost Street Sites below 165 feet bgs ("NYSDEC Deep Groundwater Remediation"). The Modified Consent Order also requires the Plaintiffs to pay substantial sums to the NYSDEC for historic costs incurred by the NYSDEC and other governmental entities or governmental agents for the NYSDEC Deep Groundwater Remediation under the Frost Street Sites. The Plaintiffs have incurred costs, and continue to incur costs, remediating the deep groundwater under the Frost Street Sites pursuant to the terms of the Modified Consent Order and have paid the NYSDEC oversight costs (collectively, "NYSDEC Deep Groundwater Costs").

8) The NYSDEC Deep Groundwater Remediation addresses contamination similar in composition and characteristic to the contamination originating from the upgradient sites owned and operated by the GTE/Sylvania Defendants, General Instruments Defendants, Metco, Verizon, (collectively, the "Upgradient Defendants") and the USAEC, NRC and DOD defendants (collectively, the "Government Defendants").

9) Plaintiffs have spent in excess of $500,000 implementing the NYSDEC Deep Groundwater Remediation and reimbursing NYSDEC for its past costs associated with the NYSDEC Deep Groundwater Remediation.

10) Plaintiffs will incur substantial additional costs, in excess of $5,000,000 implementing the NYSDEC Deep Groundwater Remediation as required by the Modified Consent Order.

11) In April of 2006, NYSDEC commenced an action in the Eastern District of New York ("NYSDEC Cost Recovery Action") seeking contribution from the Frost Street Parties and other potentially responsible parties under CERCLA for certain off-site groundwater remediation

costs, Natural Resource Damage costs, future remediation costs and past costs for an area of groundwater contamination south of Old Country Road in the NCIA ("NYSDEC OU-3 Costs"). The scope of the NYSDEC OU-3 is defined in the NYSDEC NCIA Operable Unit 3 Record of Decision dated October of 2003.

12)     In April of 2016, the Plaintiffs settled its liability in the NYSDEC Cost Recovery Action by paying NYSDEC $700,000 for NYSDEC OU-3 Costs ("NYSDEC Settlement Costs").

13)     In September of 2011, the United States Environmental Protection Agency ("EPA"), listed an area in the Town of Hempstead, including an area to the south of the NCIA, as the New Cassel/Hicksville Groundwater Contamination National Priorities List Site ("EPA Site").

14)     The EPA Site is divided into several operable units, including EPA Operable Unit 1 ("EPA OU-1").  EPA OU-1 addresses an area of shallow and deep groundwater south of the NCIA.

15)     EPA OU-1 addresses three distinct shallow plumes, identified by EPA as the Eastern, Central, and Western Plumes, and a deeper plume flowing under the Eastern Plume originating from the Upgradient Defendants and Government Defendants sites.

16)     The EPA has noticed Plaintiffs that they are responsible parties under CERCLA for the EPA OU-1 Eastern Plume and has demanded the Plaintiffs to investigate and remediate the shallower Eastern Plume consisting primarily of Tetrachloroethylene ("PCE") ("EPA OU-1 Shallow Eastern Plume") and the deeper upgradient plume consisting primarily of Trichloroethylene ("TCE") ("EPA OU-1 Deep Plume"). Plaintiffs have incurred, and will continue to incur, costs associated with the remediation, investigation and negotiation of consent

orders, concerning the EPA OU-1 Shallow Eastern Plume and the EPA OU-1 Deep Plume ("EPA OU-1 Costs").

17)     EPA has also noticed Plaintiffs that they are responsible parties under CERCLA for an area of contamination south of EPA OU-1, referred to by EPA as the "Far Field Area." EPA is conducting an investigation and has indicated that it will seek recovery of the costs associated with the remediation, and investigation concerning this area ("EPA Far Field Costs").

18)     The Defendants are either current or former operators, arrangers and/or owners of CERCLA sites and have contributed to the groundwater contamination at the EPA OU-1 area, the EPA Far Field area, the NYSDEC OU-3 area and under the Frost Street Sites (collectively the "EPA/NYSDEC Sites").  As such, the Defendants have liability as owners, arrangers and/or operators under CERCLA for the past and future response costs incurred or to be incurred by the Plaintiffs in remediating the EPA/NYSDEC Sites.

## PARTIES

### A. Plaintiffs

19)     Next Millennium Realty, L.L.C. is a New York Limited Liability Company formed under the laws of the State of New York with a principle place of business located in Nassau County, New York.

20)      Next Millennium Realty, L.L.C. is the current owner of the 89 Frost Street Site and 770 Main Street Site.

21)     101 Frost Street Associates LP, is a New York Limited Liability Company formed under the laws of the State of New York with a principle place of business located in Nassau County, New York.

22)     101 Frost Street Associates LP is the current owner of the 101 Frost Street Site.

23)     The Frost Street Parties, have incurred, response costs to date and will incur additional response costs in the future for the remediation of the soil and groundwater on and beneath EPA/NYSDEC Sites. These response costs include amounts paid: 1) NYSDEC Shallow Costs; 2) NYSDEC Deep Groundwater Costs; 3) NYSDEC OU-3 Costs; 4) NYSDEC Settlement Costs; 5) EPA OU-1 Costs and 6) EPA Far Field Costs (collectively, NYSDEC/EPA Costs). These response costs also include any and all reimbursement of the NYSDEC and EPA for past and future costs oversight costs incurred by EPA or NYSDEC. The NYSDEC/EPA Costs are consistent with the requirements of the National Contingency Plan 40 C.F.R. Part 300 ("NCP"), and therefore compensable as necessary costs of response pursuant to 42 U.S.C. Sections 9607 and 9613.

## B.  Government Defendants

24)     The United States Atomic Energy Commission ("USAEC") was an agency of the United States of America.

25)     Between 1946 and 1977 the USAEC supervised and engaged in manufacturing activities at nuclear sites, including sites located upgradient of the NCIA that utilized nuclear materials and chlorinated solvents.

26)     The USAEC also operated a plant and conducted operations at a manufacturing plant located upgradient of the NCIA that utilized chlorinated solvents.

27)     The manufacturing activities conducted by the GTE/Sylvania Defendants at the Sylvania Site was done under the direct supervision of the USAEC.

28)     The USAEC tightly controlled all aspects of the manufacturing conducted at the Sylvania Site, including the use and disposal of TCE and PCE at the Sylvania Site.

29)     Additionally, the USAEC occupied and conducted operating operation at the Sylvania Site at a separate manufacturing building under USAEC exclusive control.

30)     Solvents were utilized and disposed of by USAEC at this manufacturing facility that was part of the Sylvania Site.

31)     Between 1946 and 1977, the supervisory acts and manufacturing conducted by the USAEC resulted in the release of chlorinated solvents into the groundwater upgradient of the NCIA.

32)     The contamination released by the USAEC upgradient of the NCIA has migrated into deep groundwater beneath the NYSDEC/EPA Sites.

33)     The United States Nuclear Regulatory Commission ("NRC") is an agency of the United States of America.

34)     The NRC was established in 1974 pursuant to the Energy Reorganization Act.

35)     Pursuant to the Energy Reorganization Act, NRC assumed all the assets, liabilities, responsibilities and control of USAEC nuclear activities.

36)     The NRC is the successor to the liabilities of the USAEC, including liability under CERCLA..

37)     The United States Department of Defense ("DOD") is an executive branch department of the United States of America.

38)     The United States Army Corps of Engineers ("USACE") is an agency of the DOD, under the control of the DOD.

39)     The USACE is responsible for overseeing and conducting remediation of sites under the Formerly Utilized Site Remedial Action Program ("FUSRAP").

40)     FUSRAP is a remedial program tasked with cleanup of sites formerly under USAEC control. The cleanup program requires the remediation of nuclear materials and solvents utilized at FUSRAP sites.

41)     USAEC, NRD and DOD (collectively, the "Government Defendants") have liability under CERCLA and FUSRAP as direct operators, arrangers, indirect operator for supervising and directing other manufactures, and as entities responsible for remediation of Sylvania Site under FUSRAP.

42)     The Verizon/GTE/Sylvania site was designated by the Department of Energy as a FUSRAP site ("Sylvania Site").

43)     The USACE has been investigating the plume of contamination originating from the Sylvania Site and will issue a report in 2017.

44)     The DOD/USACE is responsible for the remediation of the plume of organic solvents originating from the Sylvania site and migrating into the deep groundwater on and under the NYSDEC/EPA Sites.


**C. Verizon Defendants**

45)     Verizon New York, Inc. ("Verizon") is a corporation formed under the laws of the State of New York, authorized to conduct business in the State of New York as a corporation.

46)     Upon information and belief, Verizon is the successor, either through merger or acquisition, to the GTE/Sylvania Defendants' assets and liabilities.  At all relevant times,

Verizon and/or the GTE/Sylvania Defendants conducted business in the County of Nassau, New York.

47)     GTE Operations Support Incorporated is a corporation formed under the laws of the State of New York, authorized to conduct business in the State of New York as a corporation.

48)     GTE Corporation is a corporation formed under the laws of the State of New York, authorized to conduct business in the State of New York as a corporation.

49)     GTE Sylvania Incorporated is a corporation formed under the laws of the State of New York, authorized to conduct business in the State of New York as a corporation.

50)     Sylvania Electrical Products Incorporated is a corporation formed under the laws of the State of New York, authorized to conduct business in the State of New York as a corporation.

51)     GTE Operations Support Incorporated, GTE Corporation, GTE Sylvania Incorporated, and Sylvania Electrical Products Incorporated (hereinafter, collectively the "GTE/Sylvania Defendants") at all relevant times conducted business in the County of Nassau, New York.

52)     The GTE/Sylvania Defendants conducted operations at the Sylvania Site located upgradient of the NYSDEC/EPA Sites that utilized volatile organic solvents including TCE and PCE.

53)     Volatile organic solvents were disposed of and released into unlined pools and otherwise released by the GTE/Sylvania Defendants at the Sylvania Site.

54)     The contamination released by the GTE/Sylvania Defendants at the Sylvania Site has migrated into deep groundwater in and beneath the NYSDEC/EPA Sites.

55)     Verizon and/or the GTE Sylvania Defendants own or have owned the Sylvania Site from which the groundwater contamination originated.

**D. Vishay Defendants**

56)     30. Vishay Intertechnology, Inc. is a corporation formed under the laws of the State of Delaware, authorized to conduct business in the State of New York as a foreign corporation.

57)     Vishay General Semiconductor, Inc. is a corporation formed under the laws of the State of Delaware, authorized to conduct business in the State of New York as a foreign corporation.

58)     Vishay Mic Technology, Inc. is a corporation formed under the laws of the State of Delaware, authorized to conduct business in the State of New York as a foreign corporation.

59)     Upon information and belief, Vishay Intertechnology, Inc., Vishay General Semiconductor, Inc., and Vishay Mic Technology, Inc.  (hereinafter, collectively the "Vishay Defendants") are collectively or individually the successor(s), either through merger or acqusition, to the General Instruments Defendants' assets and liabilities.  At all relevant times, the Vishay Defendants and/or the General Instrument Defendants conducted business in the County of Nassau, State of New York.

60)     General Semiconductor, Inc. is a corporation formed under the laws of the State of Delaware, authorized to conduct business in the State of New York as a foreign corporation. At all relevant times, it conducted business in the County of Nassau, New York.

61)     General Instruments Corporation is a corporation formed under the laws of the State of Delaware, authorized to conduct business in the State of New York as a foreign corporation. At all relevant times, it conducted business in the County of Nassau, New York.

62)     General Semiconductor, Inc. and General Instruments Corporation (collectively, the "General Instruments Defendants") conducted operations that utilized organic solvents, including TCE and PCE, at sites upgradient of the NCIA ("General Instruments Site").

63)     Organic solvents were disposed of and released into unlined pools and otherwise released by the General Instruments Defendants at the General Instruments Site.

64)     The contamination released by the General Instruments Defendants at the General Instruments Site has migrated into deep groundwater beneath the NYSDEC/EPA Sites.

65)     Upon information and belief, the Vishay Defendants and/or the General Instrument Defendants own or have owned the General Instruments Sites from which the groundwater contamination originated.

**D. Sulzer Metco Defendants**

66)     Sulzer Metco (US) Inc. ("Metco") is a corporation formed under the laws of the State of Delaware, authorized to conduct business in the State of New York as a foreign corporation. Metco is the successor of the assets and liabilities of a number of manufacturing entities that conducted manufacturing operations at 1101 Prospect Avenue ("Metco Site"). At all relevant times, Metco and/or its acquired entities conducted business in the County of Nassau, New York.

67)     Metco and/or its related entities conducted operations that utilized organic solvents, including TCE and PCE, at the Metco Site upgradient of the NCIA.

68)     Organic solvents were disposed of and released into unlined pools and otherwise released by Metco or its related entities at the Metco Site.

69)     The contamination released by Metco and its related entities upgradient of the NCIA has migrated into deep groundwater beneath the NYSDEC/EPA Sites.

70)     Upon information and belief, Metco and its predecessor entities own or have owned the Metco Site from which the groundwater contamination originated.

71)     The contamination migrating from the Metco, General Instrument Defendants, and GTE/Sylvania Defendants' sites is consistent with the nature of the contamination found in the deep groundwater under the Frost Street Sites, EPA OU-1, DEC OU-3 and EPA Far Field Area.

**E. Tenant Defendants**

72)     Marvex Processing & Finishing Corp. ("Marvex") is a dissolved corporation formed under the laws of the State of New York. At all relevant times Marvex conducted business in the County of Nassau, State of New York.

73)     Marvex was a tenant at the Frost Street Sites that utilized organic solvents, including TCE and PCE.

74)     Applied Fluidics Inc. ("AFI") is a dissolved corporation formed under the laws of the State of Delaware and authorized to do business in New York State. At all relevant times AFI conducted business in the County of Nassau, State of New York.

75)     AFI was a tenant at the Frost Street Sites that utilized organic solvents, including TCE and PCE.

76)     Allard Instrument Corp., ("Allard") was a division of AFI.  At all relevant times Allard conducted business in the County of Nassau, State of New York.

77)     Allard was a tenant at the Frost Street Sites that utilized organic solvents, including TCE and PCE.

78)     Gulf Western Industries Incorporated ("GWII") was a division of Gulf & Western Manufacturing Company ("G&W").

79)     G&W is a dissolved corporation formed under the laws of the State of Delaware and authorized to do business in New York State. At all relevant times G&W and GWII conducted business in the County of Nassau, State of New York.

80)      G&W and GWII were tenants at the Frost Street Sites that utilized organic solvents, including TCE and PCE.

81)     Nat Bassen Textile, Inc. ("Nat Bassen") is a dissolved corporation formed under the laws of the State of New York.  At all relevant times Nat Bassen conducted business in the County of Nassau, State of New York.

82)     Nat Bassen was a tenant at the Frost Street Sites that utilized organic solvents, including TCE and PCE.

83)     Upon information and belief, Physio Chem Corp. ("PCC"), and Bronco Baltimore, Inc. ("Bronco") are dissolved corporations. At all relevant times, PCC and Bronco conducted business in the County of Nassau, State of New York.

84)     PCC and Bronco were tenants at the Frost Street Sites that utilized organic solvents, including TCE and PCE.

85)     Unicord, Inc.("Unicord") is a dissolved corporation formed under the laws of the State of New York.  At all relevant times Unicord conducted business in the County of Nassau, State of New York.

86)     Unicord was a tenant at the Frost Street Sites that utilized organic solvents, including TCE and PCE.

87)     Kleartone Transparent Products, Inc. ("Kleartone") is a dissolved corporation formed under the laws of the State of New York.  At all relevant times Kleartone conducted business in the County of Nassau, State of New York.

88)     Kleartone was a tenant at the Frost Street Sites that utilized organic solvents, including TCE and PCE.

89)     Marvex, AFI, Allard, GWII, G&W, Nat Bassen, PCC, Bronco, Unicord, and Kleartone (collectively the "Frost Street Tenants") each conducted manufacturing activities at the Frost Street Sites before 1982.

90)     Prior to 1982, when the Frost Street Sites were connected to the municipal sewer, all manufacturing waste generated at the Frost Street Sites was disposed of in on-site septic systems.

91)     The waste generated by each of the Frost Street Tenants contained organic solvents including PCE and/or TCE.

92)     The manufacturing waste discharged by the Frost Street Tenants into the septic systems has contributed to the contamination of the groundwater and soil on and around the Frost Street Sites.

## FIRST CAUSE OF ACTION

## CERCLA Contribution Under Section 9613(f)

93)     Plaintiffs restate and reallege all of the foregoing allegations as if fully set forth herein.

## A. The Sites are Facilities Under CERCLA

94)     The N Y S D E C / E P A Sites are "Facilities as defined by 42 U.S.C. Section 9601(9).

95)     The F r o s t  S t r e e t  Sites, Sylvania Site, General Instrument Site and Metco Site had numerous pits, wells, leaching pools, ditches, and/or lagoons wherein hazardous substances have been deposited, disposed, placed and/or are located.

96)     Hazardous substances released at the F r o s t  S t r e e t  Sites, Sylvania Site, General Instrument Site and Metco Site have impacted the groundwater at and beneath the NYSDEC/EPA Sites.  As such, the N YSDEC/EPA Sites are "Facilities" under CERCLA.

## B. Hazardous Substances have been Released  at the Facilities

97)     At all relevant times, Defendants conducted manufacturing operations at the Frost Street Sites, Sylvania Site, General Instrument Site or Metco Site.  At all relevant times, there was no public sewer service for the Frost Street Sites, Sylvania Site, General Instrument Site or Metco Site.   All effluent generated by Defendants at the Frost Street Sites, Sylvania Site, General Instrument Site and Metco Site were disposed of by pumping, pouring, emitting, emptying, discharging, dumping, burying and disposing of the commercial waste generated by the Defendant operators into the septic and leaching system that serviced

the sites, or otherwise disposing of the waste on the sites. Some of these releases were sudden and accidental.

98)     The operations conducted by Defendants at the Frost Street Sites, Sylvania Site, General Instrument Site and Metco Site, generated hazardous substances as defined by 42 U.S.C. Section 9601(14).

99)     The hazardous substances were released at the Frost Street Sites, Sylvania Site, General Instrument Site and Metco Site by Defendants, by their disposal of the hazardous substances into the sanitary septic, leaching system, and into the soils and groundwater at the sites.

100)     Many of the hazardous substances generated by Defendants have been identified by the NYSDEC and DEC as present at the NYSDEC/EPA Sites.

101)     These activities and other activities yet to be identified constitute a disposal of hazardous substances at the Frost Street Sites, Sylvania Site, General Instrument Site and Metco Site by the Defendants.


**C.  Defendants are Responsible Parties Under Section 9607(a)(2)**

102)     At the time of the release, each of the Defendants either directly, in concert with other defendants, or through their contractual power, managed, directed, or conducted operations that resulted in the releases of hazardous substances at the facility.

103)     In addition to the operator liability under Section 9607(a), some Defendants have liability as current and former owners of the property on which hazardous waste was disposed.

**D. Third Party Plaintiffs Have Incurred Response Costs**

104)    Plaintiffs have incurred response costs to date and will incur additional response costs in the future for the remediation of the soil and groundwater on and beneath the NYSDEC/ EPA Sites. These response costs include amounts paid for the investigation, study and assessment of the soil and groundwater contamination and the implementation of the remedy as required by the NYSDEC and EPA for the NYSDEC/EPA Sites. These response costs include any and all reimbursement of the NYSDEC and EPA for past and future costs incurred by NYSDEC and EPA.

**E. The Response Costs Conform to the National Contingency Plan**

105)    The response costs incurred and to be incurred by Plaintiffs are consistent with the requirements of the National Contingency Plan.

## SECOND CAUSE OF ACTION

### CERCLA Contribution Under Section 9607

106)    Plaintiffs restate and reallege all of the foregoing allegations as if fully set forth herein.

107)    Plaintiffs are "persons" as defined under CERCLA Section 9601.

108)    Plaintiffs have incurred response costs to date and will incur additional response costs in the future for the remediation of the soil and groundwater on and beneath the NYSDEC/ EPA Sites. These response costs include amounts paid for the investigation, study and assessment of the soil and groundwater contamination and the implementation of the remedy as required by the NYSDEC and EPA for the NYSDEC/EPA Sites. These response

18

costs include any and all reimbursement of the NYSDEC and EPA for past and future costs incurred by NYSDEC and EPA. Defendants are responsible parties under CERCLA Section 9607.

109)   The response cost incurred or to be incurred by the Plaintiffs are consistent with the NCP.

110)   Defendants are liable to Plaintiffs under CERCLA Section 9607 for the response and removal costs incurred by Plaintiffs to date and into the future.

### THIRD CAUSE OF ACTION

### Declaratory Judgment Pursuant to CERCLA Sections 9607(a)(4)(B) and 9613(g)(2)

111)   Plaintiffs restate and reallege all of the foregoing allegations as if fully set forth herein.

112)   As specified above, Defendants have liability as operators and owners under CERCLA.

113)   Plaintiffs have incurred response costs to date and will incur additional response costs in the future for the remediation of the soil and groundwater on and beneath the NYSDEC/EPA Sites. These response costs include amounts paid for the investigation, study and assessment of the soil and groundwater contamination and the implementation of the remedy as required by the NYSDEC and EPA for the NYSDEC/EPA Sites. These response costs include any and all reimbursement of the NYSDEC and EPA for past and future costs incurred by NYSDEC and EPA. Defendants are responsible parties under CERCLA Section 9607.

114)   The future response costs will be consistent with the NCP.

115)   Third Party Plaintiffs are entitled to a declaratory judgment pursuant to CERCLA Sections 9607(a)(4)(B) and 9613(g)(2) holding Defendants responsible for the existence of

hazardous substances at the N Y S D E C / E P A Sites and liable for the current, future and past cleanup costs for the NYSDEC/EPA Sites.

## FOURTH CAUSE OF ACTION

### Common Law Contribution/Indemnity

116)    Plaintiffs demand indemnification and/or contribution from each and every Defendant in such amounts which are equal to their equitable share of any costs incurred or to be incurred at the NYSDEC/EPA Sites.

WHEREFORE, the Plaintiffs demand judgment on the Complaint, as follows:

(1)   On the First and Second Causes of Action, monetary judgment against the Defendants, as follows:

a.    against the Government Defendants, $25.5 Million for NYSDEC Deep Groundwater Costs, EPA OU-1 Costs and EPA Far Field Costs;

b. against the Upgradient Defendants, $20 Million for EPA OU-1 Costs and EPA Far Field Costs;

c. against the Tenant Defendants, $34.5 Million for NYSDEC Shallow Costs, NYSDEC Deep Groundwater Costs, NYSDEC OU-3 Costs, NYSDEC Settlement Cost, EPA OU-1 Costs and EPA Far Field Costs.

(2)   On the Third Cause of Action, a declaration holding the Defendants responsible for the existence of hazardous substances at the N Y S D E C / E P A Sites and liable for the current and future cleanup costs and past costs for the N Y S D E C / E P A Sites, as follows:

a.   against the Government Defendants, future costs for NYSDEC Deep Groundwater Costs, EPA OU-1 Costs and EPA Far Field Costs;

b. against the Upgradient Defendants, future costs for EPA OU-1 Costs and EPA Far Field Costs;

c. against the Tenant Defendants, future costs for NYSDEC Shallow Costs, NYSDEC Deep Groundwater Costs, NYSDEC OU-3 Costs, NYSDEC Settlement Cost, EPA OU-1 Costs and EPA Far Field Costs.

(3)      On the Fourth Cause of Action, judgment for indemnification and/or contribution from each and every Defendant, in amounts equal to their equitable share, as follows:

a.   against the Government Defendants, $25.5 Million for NYSDEC Deep Groundwater Costs, EPA OU-1 Costs and EPA Far Field Costs;

b. against the Upgradient Defendants, $20 Million for EPA OU-1 Costs and EPA Far Field Costs;

c. against the Tenant Defendants, $34.5 Million for NYSDEC Shallow Costs, NYSDEC Deep Groundwater Costs, NYSDEC OU-3 Costs, NYSDEC Settlement Cost, EPA OU-1 Costs and EPA Far Field Costs.

Dated:  Windham, New York
       June 13, 2017

                        Respectfully Submitted,
                        Kevin Maldonado and Partners LLC

By:_____
                   Kevin Maldonado
                   5 Hickory Hill Road
                   Windham, New York 12496
                   (518) 727-8149
                   kevinmaldonado64@yahoo.com