UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
101 FROST STREET ASSOCIATES, L.P., NEXT
MILLENNIUM REALTY, LLC,

                                    Plaintiffs,

                -against-                                    **MEMORANDUM AND ORDER**
                                                            17-CV-03585 (JMA) (ARL)
UNITED STATES DEPARTMENT OF ENERGY;
GTE OPERATIONS SUPPORT INCORPORATED;
GTE SYLVANIA INCORPORATED; SYLVANIA
ELECTRIC PRODUCTS INC.; VISHAY GSI, INC.;
SULZER METCO (US) INC.; MARVEX FINISHING
& PROCESSING CORPORATION; APPLIED
FLUIDICS, INC.; ALLARD INSTRUMENTS CORP.,
*a division of Applied Fluidics, Inc.*; GULF WESTERN
INDUSTRIES INCORPORATED; GULF & WESTERN
MANUFACTURING COMPANY; NAT BASSEN
TEXTILES, INC.; PHYSIO CHEM CORP.;
BRONCO BALTIMORE, INC.; UNICORD, INC.;
KLEARTONE TRANSPARENT PRODUCTS, INC.,

                                    Defendants.
------------------------------------------------------------------------X

**AZRACK, United States District Judge:**

The plaintiffs in this action are 101 Frost Street Associates, L.P. ("Frost Street Associates")

and Next Millennium Realty, LLC ("Next Millennium") (collectively, "Plaintiffs").  On June 28,

2018, Plaintiffs filed an amended complaint seeking cost recovery, contribution, and declaratory

relief for the past and future costs of investigating and remediating groundwater contamination at

certain sites in Nassau County, New York pursuant to the Comprehensive Environmental

Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601 et seq.

Before the Court is a motion to dismiss the second cause of action for cost recovery and

the third cause of action for declaratory relief filed by defendants GTE Operations Support

Incorporated, GTE Sylvania Incorporated, Sylvania Electric Products, Inc., (the "GTE/Sylvania

Defendants"), Vishay GSI, Inc., and Sulzer Metro (US) Inc. (collectively, the "Moving Defendants").[1]

For the reasons discussed below, the motion to dismiss is granted in part and denied in part.

# I. BACKGROUND

## A. Relevant Factual Background

### 1. The Frost Street Sites

On January 23, 2003, Plaintiffs entered into three separate consent orders with the New York State Department of Environmental Conservation ("DEC" or the "State"), agreeing to remediate the soil and shallow groundwater on and beneath three sites owned by Plaintiffs (the "Consent Orders"). (See Def. Reply in Supp. of Mot. to Dismiss, ECF No. 52, Ex. A, B, C.) Next Millennium owns the 89 Frost Street Site and 770 Main Street Site, and Frost Street Associates owns the 101 Frost Street Site (collectively, the "Frost Street Sites"). The Frost Street Sites are in the New Cassel Industrial Area (the "NCIA"), a 170-acre industrial and commercial manufacturing area in North Hempstead, New York. On December 8, 2016, the Consent Orders were amended and consolidated into a modified consent order which required the continued remediation of the shallow groundwater in addition to the remediation of deep groundwater under the Frost Street Sites (collectively, the "Consent Orders/Modified Consent Order").

### 2. EPA OU-1/DEC OU-3

The other site relevant to this action is the New Cassel/Hicksville Ground Water Contamination Superfund Site (the "EPA Site"), an EPA Superfund Site in Hempstead, New York, located downgradient to the NCIA. The EPA Site is divided into several operable units, including

---

[1] The U.S. Department of Energy (the "DOE") advised the Court that while it does not join the specific arguments set forth in the Moving Defendants' motion to dismiss, it believes that, to the extent any claim is dismissed, it should be dismissed as to all parties. (ECF No. 51.)

EPA OU-1, a 211-acre off site area downgradient to the NCIA that DEC previously designated as DEC OU-3 ("EPA OU-1/DEC OU-3").[2] EPA OU-1/DEC OU-3 consists of shallow and deep groundwater; specifically, it consists of three distinct shallow plumes, which the EPA identified as the Eastern, Central, and Western Plumes, and a deeper plume flowing under the Eastern Plume originating from the Sylvania Site, a site that is owned or has been owned by the GTE/Sylvania Defendants.

On March 22, 2018, the EPA issued a Unilateral Administrative Order (the "UAO") directing Plaintiffs to implement remedial investigation and design for the shallow and deeper portions of the Eastern Plume in EPA OU-1/DEC OU-3. (UAO, ECF No. 39, Ex. A.) On June 15, 2018, the EPA amended the UAO, directing Plaintiffs to implement an additional remedial investigation and design for the plumes, except for certain initial sampling of existing wells, which the EPA will conduct.

### 3. The Far Field Area

Plaintiffs also allege that the EPA notified Plaintiffs that they are potentially responsible parties under CERCLA for an area of contamination within the EPA Site but south of EPA OU-1/DEC OU-3 known as the "Far Field Area." (Am. Compl. ¶ 23.) According to the amended complaint, the EPA is still investigating this area and has indicated that it will seek recovery of the costs associated with the remediation and investigation concerning this area. (Id.) The Far Field

---

[2] In 2010, DEC referred DEC OU-3 to the EPA for listing on the National Priorities List ("NPL"), which is "the list of sites of national priority among the known releases or threatened release of hazardous substances, pollutants, or contaminants throughout the United States and its territories" and "is intended primarily to guide the EPA in determining which sites warrant further investigation." UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, *Superfund: National Priorities List (NPL)*, www.epa.gov/superfund/superfund-national-priorities-list-npl (last visited Aug. 28, 2019). In 2011, the EPA listed that site on the NPL as "EPA OU-1" of the EPA Site. As a result of this listing, the EPA assumed and concomitantly relieved the State of the responsibility for remediating the groundwater contamination thereon.

Area is not the subject of any consent orders, unilateral administrative orders, or enforcement actions.

## B. Relevant Procedural Background

### 1. The 2006 Action

On March 13, 2006, DEC commenced an action in the Eastern District of New York pursuant to, inter alia, Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), to recover past and future costs it incurred responding to the release of hazardous substances at or from nine facilities that form part of the NCIA. See 06-CV-1133 (SJF) (AYS) (the "2006 Action"). Past industrial activities conducted within the NCIA resulted in extensive volatile organic compound contamination of groundwater in the vicinity. In 1988, DEC listed the NCIA as a "Class 2 Hazardous Waste Site" in New York's Registry of Inactive Hazardous Waste Disposal Sites, thereby indicating that hazardous waste was disposed at the site and constituted a significant threat to public health or the environment.

DEC's amended complaint in the 2006 Action named Next Millennium and Frost Street Associates as defendants due to their ownership of the Frost Street Sites. The amended complaint alleged that Next Millennium and Frost Street Associates were jointly and severally liable for the State's costs incurred and to be incurred in responding to the releases of hazardous substances at their respective facilities and from their respective facilities into surrounding areas.[3] (2006 Action, Am. Compl., No. 06-CV-1133, ECF No. 3, at ¶¶ 105–106.) In their answer to the amended complaint, Next Millennium and Frost Street Associates asserted cross claims against, among other entities, the Moving Defendants in the instant action, who are alleged to be owners/operators of other industrial sites upgradient to the Frost Street Sites that contributed to the contamination at

---

[3] DEC later filed a second amended complaint in the 2006 Action to add owners and operators of four additional facilities allegedly responsible for groundwater contamination in the NCIA. (See 2006 Action, ECF No. 168.)

and emanating from the Frost Street Sites. (2006 Action, Answer to Am. Compl. & Third Party Compl., No. 06-CV-1133, ECF No. 88.)

In July 2015, DEC moved for partial summary judgment seeking, inter alia, a declaration that Next Millennium and Frost Street Associates were jointly and severally liable under Section 107(a) of CERCLA for all costs incurred and to be incurred by the State in responding to contamination at and emanating from the NCIA and, specifically, into EPA OU-1/DEC OU-3. (2006 Action, No. 06-CV-1133, ECF No. 438.) In February 2016, Judge Sandra J. Feuerstein found Next Millennium and Frost Street Associates liable under Section 107(a) of CERCLA for past costs incurred by the State in responding to contamination at these sites. New York v. Next Millennium Realty, LLC, 160 F. Supp. 3d 485, 526 (E.D.N.Y. 2016).

On June 1, 2016, Judge Feuerstein approved a consent decree involving DEC, Next Millennium, and Frost Street Associates (the "NYSDEC OU-3 Settlement"). (2006 Action, No. 06-CV-1133, ECF No. 483.) Under the NYSDEC OU-3 Settlement, Plaintiffs, without admitting liability, paid the State $700,000 to fully resolve all claims that have been or could be asserted with respect to the "matters addressed." (NYSDEC OU-3 Settlement, at ¶ 4.) The "matters addressed" in the settlement consist of:

> [C]laims that were, or could now or hereafter be, asserted by the State against the Frost Street Defendants arising out of or in connection with the disposal, release, and/or threat of release of hazardous substances at or from the NCIA and/or at or from the sites alleged to have been owned or operated by the Frost Street Defendants, including but not limited to any and all injuries to natural resources.

(Id. at ¶ 2.) In other words, the NYSDEC OU-3 Settlement covers any claims the State could assert against Next Millennium and Frost Street Associates pertaining to contamination at or emanating from sites in the NCIA, including contamination at or emanating from the Frost Street Sites into, for example, EPA OU-1/DEC OU-3. The NYSDEC OU-3 Settlement also provides that Next Millennium and Frost Street Associates "may assert any claims or causes of action

against any person other than the State, to the extent permitted by law, for any costs, damages, contribution or attorney's fees arising out of any of the Matters Addressed in this Fourth Supplemental Consent Decree."  (Id. at ¶ 7.)

Similarly, in the 2006 Action, the Moving Defendants, without admitting liability, agreed to pay DEC a total of $1.85 million to resolve all of the State's claim(s) against them for the "matters addressed" in the agreement, which was defined to be claims "arising out of or in connection with the disposal, release, and/or threat of release of hazardous substances at or from the NCIA . . . and/or at or from the Upgradient Sites [i.e., the sites owned by the Moving Defendants] . . . ."  (2006 Action, Moving Defendants Settlement, No. 06-CV-1133, ECF No. 50-3, at ¶ 2.)

### 2.  The Instant Action

On June 14, 2017, Plaintiffs Next Millennium and Frost Street Associates commenced this action against, inter alia, the Moving Defendants, seeking contribution under Section 113(f), cost recovery under Section 107(a), and declaratory relief pursuant to Sections 107(a)(4)(B) and 113(g)(2).  (ECF No. 1.)  On June 28, 2018, Plaintiffs filed an amended complaint in light of the EPA's issuance of the UAO.  (ECF No. 46.)

On August 30, 2018, the Moving Defendants filed the instant motion to dismiss.  (Mot. to Dismiss, ECF No. 50) ("Def. Mem.").  Judge Joseph F. Bianco held oral arguments on that motion in November 2018.  (ECF No. 52.)  On May 31, 2019, this case was reassigned to the undersigned.

## II.  DISCUSSION

### A.  Standard of Review

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a plaintiff must allege sufficient facts "to state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A claim is facially plausible only "when

the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). Mere labels and legal conclusions will not suffice. Twombly, 550 U.S. at 555. In reviewing the motion, the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006). When deciding a motion to dismiss, a court may consider materials attached to the complaint, materials integral to the complaint, and materials incorporated into the complaint by reference. Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004).

## B. Causes of Action under CERCLA

CERCLA is a remedial statute "designed to encourage prompt and effective cleanup of hazardous waste sites" by "assuring that those responsible for any damage, environmental harm, or injury from chemical poisons bear the costs of their actions." Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc., 596 F.3d 112, 120 (2d Cir. 2010). Under CERCLA, states and the federal government may "initiate comprehensive cleanups and . . . seek recovery of expenses associated with those cleanups" from "property owners [who] are strictly liable for the hazardous materials on their property, regardless of whether or not they deposited them there." Id. To relieve the burden on property owners, CERCLA permits them to "seek reimbursement of their cleanup costs from others in the chain of title or from certain polluters—the so-called potentially responsible parties ('PRPs')." Id. (citing 42 U.S.C. § 9607(a)).

CERCLA provides two mechanisms through which PRPs may recover costs they expended to decontaminate a polluted site: Section 107(a) for cost recovery claims and Section 113(f) for contribution claims.

Section 107(a) authorizes the United States, a state, or a PRP to seek reimbursement for the costs incurred remediating contamination at a property. 42 U.S.C. § 9607(a)(4); Consol.

Edison Co. of New York v. UGI Utilities, Inc., 423 F.3d 90, 100 (2d Cir. 2005) (observing that Section 107 "permits a party that has not been sued or made to participate in an administrative proceeding, but that, if sued, would be held liable under section 107(a), to recover necessary response costs incurred voluntarily, not under a court or administrative order or judgment"). Section 107(a)(4)(B) permits a private party to commence a cost recovery action for "any other necessary costs of response incurred by any other person consistent with the [NCP]." 42 U.S.C. § 9607(a)(4)(B). Such actions must be consistent with the National Contingency Plan ("NCP"), which is "the federal government's roadmap for responding to the release of hazardous substances." Niagara Mohawk, 596 F.3d at 121. Liability is joint and several unless there is a discrete harm that provides a basis for allocating costs to parties. See Burlington N. & Santa Fe Ry. Co. v. United States, 556 U.S. 599, 613–14 (2009) (discussing case law establishing joint and several liability under private causes of action under Section 107(a)(4)(B)). The statute of limitations for Section 107(a) claims is six years from the initiation of remedial actions. 42 U.S.C. § 9613(g)(2). "When CERCLA was first enacted, [Section 107(a) cost recovery] was the only remedy available, and [c]ourts struggled with whether PRPs (themselves liable for some of the cleanup) could invoke § 107 for contribution from other PRPs for their proportionate share of the costs as opposed to full cost recovery." Niagara Mohawk, 596 F.2d at 121.

Congress expressly authorized contribution under CERCLA when it added Section 113 to the statutory scheme in enacting the Superfund Amendments and Reauthorization Act ("SARA"), 100 Stat. 1613. Id. Section 113 provides PRPs with two avenues of relief to obtain contribution. Section 113(f)(1) provides that "[a]ny person may seek contribution from any other person who is liable or potentially liable under [Section 107(a)] of this title, during or following any civil action" commenced under Sections 106 or 107(a). 42 U.S.C. § 9613(f)(1); United States v. Atlantic

Research Corporation, 551 U.S. 128, 139 (2007) (explaining that "Section 113(f)(1) authorizes a contribution action to PRPs with common liability stemming from an action instituted under [CERCLA]").  Section 113(f)(3)(B) also "provides a right of contribution to PRPs that have settled their CERCLA liability with a state or the United States through either an administrative or judicially approved settlement."  Niagara Mohawk, 596 F.3d at 121 (citing 42 U.S.C. § 9613(f)(3)(B)).[4]  The statute of limitations for Section 113(f) claims is three years from the date of a judgment or judicially approved settlement.  42 U.S.C. § 9613(g)(3).

The Supreme Court has attempted to delineate the boundaries between Sections 107(a) and 113(f).  In Cooper Industries, Inc. v. Aviall Services, Inc., the owner of the contaminated property, Aviall Services, "voluntarily" cleaned up the property and was seeking contribution under Section 113(f)(1) from the former owner, Cooper Industries.  543 U.S. 157 (2004).  The Supreme Court held that a private party could seek contribution under Section 113(f)(1) from other liable parties only after being sued under Sections 106 or 107(a).  Id. at 161 (2004).  The Court reasoned that "Section 113(f)(1) authorizes contribution claims only 'during or following' a civil action under § 106 or § 107(a), and it is undisputed that Aviall has never been subject to such an action.  Aviall therefore has no § 113(f)(1) claim."  Id. at 168.  The Court declined to address whether a unilateral administrative order issued by the EPA qualified as a "civil action" for purposes of Section 113(f)(1), see id., and, most significantly, left open the question of whether a PRP who had not previously been subject to a civil action could also sue under Section 107(a)(4)(B).  See id. 169–170.

---

[4] Specifically, Section 113(f)(3)(B) states: "A person who has resolved its liability to the United States or a State for some or all of a response action or for some or all of the costs of such action in an administrative or judicially approved settlement may seek contribution from any person who is not a party to a settlement referred to in paragraph (2)." 42 U.S.C. § 9613(f)(3)(B).

Three years later, in <u>United States v. Atlantic Research Corporation</u>, the Supreme Court addressed the question left open in <u>Cooper Industries</u>. 551 U.S. 128 (2007). Atlantic Research contaminated a site it leased from the United States and subsequently cleaned up the site at its own expense. Atlantic Research then sued the United States to recover the costs incurred under Sections 107(a) and 113(f). The United States moved to dismiss, arguing that Section 107(a) does not allow PRPs to recover costs. <u>Id.</u> at 133–134.

In <u>Atlantic Research</u>, the Court held that a PRP who had voluntarily cleaned up a site in the absence of a prior or pending civil action could sue under Section 107(a). <u>Id.</u> at 141. According to the Court, the availability of an action under Section 107(a)(4)(B) did not mean that PRPs had the choice of proceeding under either Section 107(a) or Section 113(f). <u>Id.</u> at 139–40. Specifically, the Court found that when a PRP voluntarily cleans up a site in the absence of a prior civil action or a judicially approved settlement, Sections 107(a) and 113(f) do not overlap and, thus, "[t]he choice of remedies simply does not exist." <u>Id.</u> at 140. However, the Court recognized the possibility that Sections 107(a)(4)(B) and 113(f) might overlap in some circumstances. As an example, the Court noted "that a PRP may sustain expenses pursuant to a consent decree following a suit under § 106 or § 107(a)" and, "[i]n such a case, the PRP does not incur costs voluntarily but does not reimburse the costs of another party." <u>Id.</u> at 139 n.6. The Court expressly declined to "decide whether these compelled costs of response are recoverable under § 113(f), § 107(a), or both." <u>Id.</u>; <u>see</u> <u>W.R. Grace & Co.-Conn v. Zotos Int'l</u>, 559 F.3d 85, 93 n.7 (2d Cir. 2009) ("As the Supreme Court suggested, it may well be that a party who sustains expenses pursuant to a consent decree following a suit under [CERCLA] may have a cause of action under either section 113(f), section 107(a), or both."). Rather, the Court confined its holding to the proposition that "costs incurred voluntarily are recoverable only by way of § 107(a)(4)(B), and costs of reimbursement to

another person pursuant to a legal judgment or settlement are recoverable only under § 113(f)."
Id. According to the Court, "neither remedy swallows the other." Id.

## C. The Mutual Exclusivity of Sections 107(a) and 113(f)

Since Atlantic Research, the courts of appeals that have addressed the issue, including the Second Circuit, have held that when causes of action under Sections 107(a) and 113(f) overlap, Section 113(f) provides the exclusive remedy. See, e.g., Niagara Mohawk, 596 F.3d at 127–28; Whittaker Corp. v. United States, 825 F.3d 1002, 1008 (9th Cir. 2016) (seeking to recover costs that plaintiff incurred pursuant to a settlement agreement that was executed after a civil action was commenced against them); Hobart Corp. v. Waste Mgmt., Inc., 758 F.3d 757, 767 (6th Cir. 2014) (seeking to recover costs that plaintiffs incurred pursuant to a settlement agreement); NCR Corp. v. George A. Whiting Paper Co., 768 F.3d 682, 691 (7th Cir. 2014) (seeking to recover costs that plaintiffs incurred pursuant to a unilateral administrative order that was later enforced by the EPA in a subsequent civil action); Solutia, Inc. v. McWane, Inc., 672 F.3d 1230, 1237 (11th Cir. 2012) (seeking to recover costs that plaintiffs incurred pursuant to consent decrees that were executed subsequent to a civil action commenced against them); Morrison Enter., LLC v. Dravo Corp., 638 F.3d 594, 603 (8th Cir. 2011) (seeking to recover costs that plaintiffs incurred pursuant to several consent decrees). For example, in Niagara Mohawk, the plaintiff sought to recover (under Section 107(a) or, alternatively, Section 113(f)(3)(B)) costs it incurred pursuant to a consent order it entered into with DEC. 596 F.3d at 13. The Second Circuit held that the plaintiff could only pursue a contribution claim pursuant to Section 113(f)(3)(B) since the plaintiff had resolved its liability pursuant to an administrative settlement and, therefore, could not also pursue a Section 107(a) claim. Id. at 127–28. It reasoned that allowing the plaintiff to pursue a cost recovery claim when its claim "fits squarely within the more specific requirements of § 113(f)(3)(B)" would

"nullify the SARA amendment and abrogate the requirements Congress placed on contribution claims under § 113." Id.

The rationale of the courts' analyses centered on the structural consequences of non-exclusive causes of action. They reasoned that if plaintiffs could choose between Sections 107(a) and 113(f), they would invariably choose Section 107(a) since it provides joint and several liability, a longer statute of limitations, and is not subject to the "contribution protection" bar that applies to Section 113(f). See, e.g., Hobart, 758 F.3d at 767. Allowing such plaintiffs to proceed under Section 107(a) when Section 113(f) was available to them would "undermine" CERCLA's structure. See Niagara Mohawk, 596 F.3d at 128; Solutia, 672 F.3d at 1236; Morrison Enters., 638 F.3d at 603.

## D. The Issue of "Voluntarily" Incurred Costs

These court of appeals decisions addressing the mutual exclusivity issue all concerned costs that: (1) the plaintiffs incurred *after* the execution of a consent decree, issuance of a unilateral administrative order, or initiation of a civil action; and (2) the plaintiffs were *required* to incur by the consent decree or unilateral administrative order. They did not, however, address "voluntarily" incurred costs. A cost could be considered "voluntary" if either (1) the cost was incurred *before* execution of a consent decree, settlement, or unilateral administrative order; or (2) the cost was incurred *after* execution of a consent decree, settlement, or unilateral administrative order but was not required to be incurred by the terms of the decree, settlement, or order. Thus, the court of appeals decisions cited above did not address whether such "voluntarily" incurred costs must be recovered in a contribution action under Section 113(f) or, alternatively, whether those costs may also be simultaneously pursued in a cost recovery action under Section 107(a). In addressing this

issue, the parties direct the Court to Appleton Papers Inc. v. George A. Whiting Paper Co., 572 F. Supp. 2d 1034, 1044 (E.D. Wis. 2008).

In Appleton Papers, the plaintiffs sought recovery of "voluntarily" incurred costs under Section 107(a) that were not compelled by the consent decrees they were a party to. Id. at 1041. The defendant contended that the plaintiffs' cause of action under Section 107(a) should be dismissed because once the government ordered cleanup, all of plaintiffs' costs can no longer be deemed "voluntary" regardless of whether the specific costs sought were actually compelled or not. Id. at 1042. The court framed the issue whether "the focus [should] be on the nature of the costs themselves or on the procedural status of the party seeking to recover those costs?" Id.

The Appleton Papers court found that the focus should be on the procedural status of the party seeking recovery, reasoning that this position "finds greater support in the text of CERCLA and the caselaw construing it." Id. It found that despite the plaintiffs' "use of the terms 'voluntary' and 'involuntary' to distinguish between payments recoverable under § 107(a) and those recoverable under § 113(f), the operative principle appears to be that § 107(a) is available to recover payments only in cases where § 113(f) is not. In cases where a claim for contribution can be asserted under § 113(f), § 107(a) cannot be used."[5] Id. 1042–1043. Thus, the Appleton Papers court held that, because the plaintiffs clearly alleged the elements of a contribution claim, they had

---

[5] The court also found the plaintiffs' characterization of the costs as "voluntary" peculiar in light of the nature of response costs:

> The notion that any of the response costs paid by [the plaintiffs] were voluntary is curious, to say the least. [The plaintiffs] are not philanthropic organizations devoted to cleaning up environmental messes created by other companies. Their contributions to the response effort to the PCB contamination of the [Site] resulted from their recognition that they were at least in part responsible for the contamination. In this respect, payments made prior to the enforcement action are no more or less voluntary then payments made pursuant to the consent decree they voluntarily entered with the state and federal governments.

Appleton Papers, 572 F. Supp. 2d, at 1043 n.8.

to pursue a contribution action under Section 113(f) for "not only payments made pursuant to the consent decree filed in the civil action instituted against them . . . but also <u>any other payments</u> they made to discharge their common liability under § 107(a) <u>before or after</u> that time." <u>Id.</u> at 1044 (emphasis added).

Similarly, in <u>Ford Motor Co. v. Michigan Consolidated Gas Co.</u>, a district court rejected the defendant/counter-plaintiff's argument that it was entitled to proceed under Section 107(a) for certain "voluntary" costs incurred that were not attributable to a consent decree or the "result" of a Section 106 or Section 107(a) action.[6]  08-CV-13503, 2015 WL 540253, at *11 (E.D. Mich. Feb. 10, 2015).  After discussing <u>Appleton Papers</u>, the district court pointed out that Section 113(f) was triggered when the defendant/counter-plaintiff was previously sued under Section 107(a) and concluded that the voluntary costs it sought "are still part and parcel of the *same common liability* at issue in [the previous Section 107(a) action] regarding the remediation of the [site at issue]." <u>Id.</u> at *13–14 (emphasis in original).  Accordingly, the court held that the defendant/counter-plaintiff was foreclosed from bringing a cost recovery action under Section 107(a) and must proceed under Section 113(f) for those costs.  <u>Id.</u>

The Court finds the reasoning of <u>Appleton Papers</u> and <u>Ford Motor Co.</u> persuasive.

## E.  Plaintiffs' Amended Complaint

Here, Plaintiffs assert three cause of action against the Moving Defendants.  In the first cause of action, Plaintiffs seek contribution under Section 113(f)(3)(B) of CERCLA for past and future costs incurred as a result of Plaintiffs' remediation of the soil and groundwater on and

---

[6] The defendant/counter-plaintiff in <u>Ford Motor Co.</u> stated that these "voluntarily" incurred costs were "related to evaluating and investigating the nature and source of releases of hazardous substances at and originating from the [site], the migration of contamination and evaluation of its potential impact on [its] adjacent property, and the ability of any proposed remedial actions to adequately and cost-effectively address the sources of contamination to prevent further migration." <u>Ford Motor Co.</u>, 2015 WL 540253, at *9, n. 8.

beneath the Frost Street Sites, EPA OU-1/DEC OU-3, and the Far Field Area pursuant to the Consent Order/Modified Consent Order, the UAO, and the NYSDEC OU-3 Settlement. Plaintiffs also seek contribution for their reimbursement of DEC and EPA for such costs. (Id. at ¶ 93.) In the second cause of action, Plaintiffs seek to recover their "voluntarily incurred response costs" under Section 107(a) of CERCLA for remediating the soil and groundwater on and beneath the Frost Street Sites, EPA OU-1/DEC OU-3, and the Far Field Area "prior to the execution of" the Consent Orders/Modified Consent Order, the UAO, and the NYSDEC OU-3 Settlement. (Id. at ¶ 97.) In the third cause of action, Plaintiffs seek a declaratory judgment pursuant to Sections 9607(a)(4)(B) and 9613(g)(2) "holding Defendants responsible for the existence of hazardous substances at [the Frost Street Sites, EPA OU-1/DEC OU-3, and the Far Field Area] and liable for the current, future and past cleanup costs for the" sites. (Id. at ¶ 106.)

The Moving Defendants seek to dismiss the second and third causes of action in the amended complaint. They seek dismissal of the second cause of action on the ground that, because Plaintiffs incurred costs with the respect to the Frost Street Sites and EPA OU-1/DEC OU-3 pursuant to judicially approved settlements and the UAO, Plaintiffs' exclusive remedy for all costs incurred responding to the contamination at these sites is contribution under Section 113(f)—not Section 107(a)—regardless of whether some of those costs were "voluntary" or incurred prior to the execution of the Consent Orders/Modified Consent Order, the UAO, and the NYSDEC OU-3 Settlement. (Def. Mem., at 6–14.) The Moving Defendants also allege that Plaintiffs failed to adequately plead a viable cost recovery action under Section 107(a) with respect to the Far Field Area. (Id. at 14–15.) Consequently, the Moving Defendants contend that because Plaintiffs are without a viable Section 107(a) claim, and Section 113(f) does not provide declaratory relief, Plaintiffs' third cause of action for declaratory relief must also be dismissed. (Id. at 16–17.)

## F. Analysis

Plaintiffs concede that many of their costs were incurred as the result of the Consent Orders/Modified Consent Order and are recoverable under Section 113(f) in their first cause of action. (Pl. Mem., at 2.) However, Plaintiffs allege that they also incurred costs "voluntarily" which may be recovered under Section 107(a) in their second cause of action. Plaintiffs do not view these costs as part and parcel of the costs for which a contribution action under Section 113(f) would be appropriate because they were not incurred pursuant to a consent order, unilateral administrative order, or settlement decree.

The Court finds that, because Plaintiffs can assert a contribution claim under Section 113(f) with respect to the costs incurred at the Frost Street Sites and EPA OU-1/DEC OU-3, all costs pertaining to those areas must be pursued under Section 113(f), including those costs alleged to have been "voluntarily" incurred prior to the Consent Orders/Modified Consent Order, the UAO, and the NYSDEC OU-3 Settlement. However, the Court also finds that Plaintiffs may proceed under Section 107(a) with respect to costs incurred at the Far Field Area in the second cause of action, as Plaintiffs have not resolved their liability for any of the costs pertaining to this area in an administrative or judicially approved settlement, nor was this area a subject of a prior civil action.

### 1. The Frost Street Sites and EPA OU-1/DEC OU-3

It is undisputed that Plaintiffs must proceed under Section 113(f)(3)(B) to recover the costs allegedly incurred in remediating the Frost Street Sites and EPA OU-1/DEC OU-3 pursuant to the Consent Orders/Modified Consent Order, the NYSDEC OU-3 Settlement, and the UAO.[7] See 42

---

[7] Plaintiffs assume that the UAO either fully resolves their liability for the purposes of Section 113(f)(3)(B) or qualifies as a "civil action" under Section 113(f)(1) and, thus, entitles them to contribution for the costs incurred in effectuating the EPA's order. The Moving Defendants do not challenge this.

U.S.C. § 9613(f)(3)(B). DEC's commencement of the 2006 Action against Plaintiffs also appears to have triggered Section 113(f)(1) such that Plaintiffs must pursue a contribution action to recover those costs.[8] See 42 U.S.C. § 9613(f)(1).

The sole disputed issue before the Court is whether Plaintiffs can also pursue a cost recovery action under Section 107(a), in addition to the contribution action under Section 113(f), for the costs pertaining to the Frost Street Sites and EPA OU-1/DEC OU-3 that Plaintiffs allegedly "voluntarily" incurred prior to the Consent Orders/Modified Consent Order, the NYSDEC OU-3 Settlement, and the UAO. Specifically, in the second cause of action, Plaintiffs seek to recover their "voluntarily incurred response costs" under Section 107(a) of CERCLA for remediating the soil and groundwater on and beneath the Frost Street Sites and EPA OU-1/DEC OU-3 "prior to the execution of" the Consent Orders/Modified Consent Order, the NYSDEC OU-3 Settlement, and the UAO. (Id. at ¶ 97.) Such costs include the "amounts paid for the investigation, study, and assessment of the soil and groundwater contamination and the implementation of cleanup activity" and "engineering costs, investigation costs, drilling costs, sampling costs, disposal costs, and other costs." (Am. Compl. ¶¶ 97–98.)

As previously noted, the Court finds the reasoning in Appleton Papers persuasive. Accordingly, because Plaintiffs can assert a contribution claim under Section 113(f) with respect to the costs incurred at the Frost Street Sites and EPA OU-1/DEC OU-3 that post-date the Consent

---

[8] In the 2006 Action, Plaintiffs were found liable under Section 107(a) of CERCLA for response costs incurred by the State in responding to contamination at and emanating from the NCIA, which includes the Frost Street Sites, and specifically into EPA OU-1/DEC OU-3. Next Millennium Realty, 160 F. Supp. at 526. Section 113(f)(1) provides that "[a]ny person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action . . . under section 9607(a) of this title." 42 U.S.C. § 9613(f)(1) (emphasis added). The 2006 Action commenced by DEC clearly qualifies as a "civil action" under Section 113(f)(1) and Plaintiffs have sufficiently alleged that the Moving Defendants are potentially liable under Section 107(a) in the amended complaint. (See Am. Compl. ¶¶ 91–92.) Specifically, Plaintiffs alleged that: (1) Moving Defendants' current/former sites are CERCLA sites; (2) hazardous substances were released from Moving Defendants' sites; (3) Moving Defendants are responsible parties under CERCLA; and (4) Plaintiffs have incurred response costs consistent with the NCP. (See Am. Compl. ¶¶ 83–94.)

Orders/Modified Consent Order, the NYSDEC OU-3 Settlement, and the UAO, *all* of Plaintiffs' costs pertaining to those areas must be pursued under Section 113(f), including "voluntary" costs that Plaintiffs incurred prior to the triggering events. As the <u>Appleton Papers</u> court held, despite the "use of the terms 'voluntary' and 'involuntary' to distinguish between payments recoverable under § 107(a) and those recoverable under § 113(f), the operative principle appears to be that § 107(a) is available to recover payments only in cases where § 113(f) is not. In cases where a claim for contribution can be asserted under § 113(f), § 107(a) cannot be used." <u>Appleton Papers</u>, 572 F. Supp. 2d, at 1042–1043. Thus, because Plaintiffs are able to recover under Section 113(f) "not only payments made pursuant to the consent decree filed in the civil action instituted against them . . . but also <u>any other payments</u> they made to discharge their common liability under § 107(a) <u>before or after</u> that time . . . they have no need to resort to § 107(a)."[9] See <u>Appleton Papers</u>, 572 F. Supp. 2d, at 1044.

Plaintiffs argue that the Moving Defendants' reliance on <u>Appleton Papers</u> is "misplaced" because "[t]he plaintiff in <u>Appleton</u> incurred costs as a result of a government enforcement action and a consent decree[] [and] [t]here is no indication in the case that the plaintiffs sought pre-enforcement or pre-consent decree costs in that litigation." (Pl. Mem., at 8.) The <u>Appleton Papers</u> plaintiffs characterized their voluntary incurred costs as those incurred "in addition to those costs and damages paid or to be paid pursuant to the [various consent decrees]" or, in the court's words, those costs "above and beyond those explicitly provided for in the consent decrees and settlement agreements." <u>Appleton Papers</u>, 572 F. Supp. 2d at 1041–1042. Specifically, these costs included "the costs of identifying other responsible parties, conducting risk assessments, funding natural

---

[9] Plaintiffs do not appear to seek "voluntarily" incurred costs in their first cause of action. Rather, the first cause of action appears to be confined to those costs post-dating the Consent Orders/Modified Consent Order, NYSDEC OU-3 Settlement, and UAO.

resources damages projects, and otherwise investigating and responding to the [site contamination]." Id. at 1041. It is not apparent from the court's decision and the parties' motion papers in Appleton Papers whether the plaintiffs sought to recover "voluntary" costs under Section 107(a) that were allegedly incurred *before* the execution of the orders in question, as Plaintiffs do here. Nevertheless, the Court finds Plaintiffs' attempt to distinguish Appleton Papers unpersuasive. Regardless of whether "voluntary" costs are incurred before the execution of a consent order or after, they must be pursued under Section 113(f) if either Section 113(f)(1) or Section 113(f)(3)(B) are triggered and such costs were incurred "to discharge a common liability in excess of the plaintiff's own fair share[.]" Id. at 1044. Plaintiffs have not given any reason why "voluntary" costs pre-dating a consent order should be treated any differently than "voluntary" costs that post-date and are outside the scope of a consent order.[10] Even if Appleton Papers did not involve any costs that pre-dated the consent order, the Court still finds persuasive the court's logic that the plaintiffs must proceed under Section 113(f) for "not only payments made pursuant to the consent decrees filed in the civil action instituted against them . . . but also any other payments they made to discharge their common liability under § 107(a) before or after that time." Id. at 1044 (emphasis added).

Thus, the Consent Orders/Modified Consent Orders, the NYSDEC OU-3 Settlement, and the UAO (and possibly also the commencement of the 2006 Action) all trigger Section 113(f) as

---

[10] Like Plaintiffs here, the defendants in Bernstein v. Bankert argued that Atlantic Terminal found "that only parties who voluntarily incur response costs can bring an action for cost recovery under [Section 107(a)], and that parties who are 'compelled' to incur response costs because of an enforcement action or a government settlement must proceed under [Section 113(f)] instead." 733 F.3d 190, 209 (7th Cir. 2013). In addition to finding that this was a misreading of Atlantic Terminal, the Seventh Circuit noted that this argument asks the court "to impose a requirement that appears nowhere in the statutory text" of CERCLA. Id. at 209–210. "CERCLA does not ask whether a person incurs costs voluntarily or involuntarily. It asks whether a person incurred costs of response consistent with the national contingency plan, whether a person has previously been subjected to a civil action under § 9606 or § 9607(a), and so on." Id. at 210. This supports Appleton Papers' conclusion that the procedural status of the party seeking to recover the costs determines whether recovery under Section 107 or Section 113(f) is available, not whether the costs were "voluntarily" or "involuntarily" incurred. Appleton Papers, 572 F. Supp. 2d, at 1042–1043.

the exclusive avenue for relief with respect to Plaintiffs' costs at the Frost Street Sites and EPA OU-1/DEC OU-3. To allow Plaintiffs to pursue both a contribution action and a cost recovery action for these costs "would in effect nullify the SARA amendment and abrogate the requirements Congress placed on contribution claims under § 113." <u>Niagara Mohawk</u>, 596 F.3d at 128.

Accordingly, the motion to dismiss the second cause of action is granted to the extent that it pertains to the costs associated with the Frost Street Sites and EPA OU-1/DEC OU-3.

### 2. The Far Field Area Costs

It is also undisputed that Plaintiffs did not resolve their liability for any of the costs pertaining to the Far Field Area in an administrative or judicially approved settlement. Indeed, Plaintiffs stated in the amended complaint that the EPA notified Plaintiffs that they are PRPs under CERCLA for the Far Field Area, that the EPA is currently investigating the area, and "<u>will</u> seek recovery of the costs associated with the remediation and investigation concerning this area." (Am. Compl. ¶ 23) (emphasis added). As such, Plaintiffs cannot seek contribution for the costs they incurred in investigating the Far Field Area under Section 113(f)(3)(B). Additionally, Section 113(f)(1) is unavailable with respect to the Far Field Area because this area was not a subject of the 2006 Action or any other civil action. Accordingly, Plaintiffs may pursue a cost recovery claim with respect to this area under Section 107(a). <u>See</u> <u>Metropolitan Water Reclamation Dist. Of Greater Chicago v. North American Galvanizing & Coatings, Inc.</u>, 473 F.3d 824, 834–836 (7th Cir. 2007) (holding that the plaintiff was not foreclosed from bringing a cost recovery action under Section 107(a) even though it might later be eligible to bring a contribution action under Section 113(f)).

Anticipating this finding, the Moving Defendants contend that any Section 107(a) claim concerning the Far Field Area should be dismissed as inadequately pled. To establish a prima facie case for the recovery of response costs incurred from cleaning up a contaminated site, a

plaintiff must show: "1) that a defendant falls under one of the four categories of covered persons, 2) that the site is a 'facility' as defined by CERCLA, 3) that there has been a release or threat of release of a hazardous substance at the facility, 4) that the release of threat of release caused the plaintiff to incur response costs, and 5) that plaintiff's costs were 'necessary costs of response . . . consistent with the [NCP]." Warwick Admin. Grp. v. Avon Prod., Inc., 820 F. Supp. 116, 121 (S.D.N.Y. 1993) (citing 42 U.S.C. § 9607(a)).

The Moving Defendants essentially argue that Plaintiffs have not adequately pled the fourth and fifth prongs of a prima facie case for recovery under Section 107(a) with respect to the Far Field Area. (Def. Mem., at 15.) Plaintiffs respond that its allegations of current and future costs associated with the investigation, design, and evaluation of the contamination at the Far Field Area and that such costs are consistent with the NCP are sufficient to state a plausible claim for relief at this juncture. (Pl. Mem., at 9–11) (citing Am. Compl. ¶¶ 23, 24, 30, 97–99.)

At this stage, Plaintiffs must allege that it "incurred costs responding to the release or the threat [of release] and . . . [that] the costs and response conform to the [NCP]." Price Trucking Corp. v. Norampac Indus., Inc., 748 F.3d 75, 80 (2d Cir. 2014). However, Plaintiffs "need not particularize the costs incurred," and "an allegation that plaintiff has incurred and will continue to incur expenses and costs . . . sufficiently allege[s] recoverable response costs." 105 Mt. Kisco Assocs. LLC v. Carozza, No. 15-CV-5346, 2017 WL 1194700, at *22 (S.D.N.Y. Mar. 30, 2017) (quoting Alloy Briquetting Corp. v. Niagara Vest, Inc., 756 F. Supp. 713, 717 (W.D.N.Y. 1991) (internal quotation marks omitted). Indeed, "[d]istrict courts in this Circuit have found that expenses incurred during initial evaluations and investigations are recoverable under CERCLA as response costs." Id. (citing MPM Silicones, LLC, 2016 WL 3962630, at *24).

In the amended complaint, Plaintiffs allege that they "have voluntarily incurred costs associated with the investigation, design, and evaluation of the Far Field Area," including "engineering and design costs incurred by, inter alia, Ensafe, Plaintiffs' environmental consultant." (Am. Compl. ¶ 23.) Plaintiffs also allege that their incurred costs "are consistent with the requirements of the National Contingency Plan, 40 C.F.R. Part 300, and therefore compensable as necessary costs of response pursuant to 42 U.S.C. Section 9607." (Id. at ¶ 30.) Accepting the factual allegations set forth in the amended complaint as true and drawing all reasonable inferences in favor of Plaintiffs, Plaintiffs have plausibly alleged recoverable response costs under CERCLA with respect to the Far Field Area.

Accordingly, the motion to dismiss Plaintiffs' second cause of action with respect to the Far Field Area is denied.

### 3. Declaratory Judgment

In the third cause of action, Plaintiffs seek a declaratory judgment pursuant to Sections 9607(a)(4)(B) and 9613(g)(2) "holding Defendants responsible for the existence of hazardous substances at the [Frost Street Sites, EPA OU-1/DEC OU-3, and the Far Field Area] and liable for the current, future and past cleanup costs for the" sites. (Am. Compl. ¶ 106.) The Moving Defendants argue that because Plaintiffs cannot bring a cost recovery action with respect to any of the sites, and Section 113(f) does not provide declaratory relief, Plaintiffs' third cause of action for declaratory relief must be dismissed. (Def. Mem., at 16–17.)

As discussed supra, Plaintiffs may pursue a cost recovery action under Section 107(a) with respect to the Far Field Area. Thus, there is no dispute that a declaratory judgment could be issued under Section 113(g)(2) with respect to a cost recovery action under Section 107 for costs allegedly incurred at the Far Field Area. The remaining question is whether a declaratory judgment could

be issued under Section 113(g)(2) with respect to a contribution action under Section 113(f) for costs allegedly incurred at the Frost Street Sites and EPA OU-1/DEC OU-3.

Section 113(g)(2) provides, in relevant part, that "the court shall enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages." 42 U.S.C. § 9613(g)(2). While Section 113(g)(2) does not expressly authorize a declaratory judgment in a contribution action, it does not explicitly forbid it. In <u>New York v. Solvent Chemical Company, Inc.</u>, the Second Circuit confronted this issue but ultimately did not resolve it. The Second Circuit observed that while the text of Section 113(g)(2) appears to "limit[] its application to '[a]n initial action for recovery of the costs referred to in [Section 107],' i.e., not section 113(f)," the court did not have to "decide whether section 113(g)(2)'s mandatory wording (on entry of a declaratory judgment for future liability) applies to § 113(f) contribution actions, because the factors considered by a district court under the Declaratory Judgment Act, 28 U.S.C. § 2201(a), [were] sufficient to require a declaratory judgment in [that] case." 664 F.3d 22, 25 (2d Cir. 2011).

In their memorandum in opposition to the motion to dismiss, Plaintiffs contend that, irrespective of whether Section 113(g)(2) provides a court with authority to enter a declaratory judgment in a Section 113(f) action, "a declaratory judgment is also available pursuant to the Declaratory Judgment Act, 28 U.S.C. 2201(a)." (Pl. Mem., at 13) (citing <u>Solvent Chemical Co.</u>, 664 F.3d at 22–27). The Moving Defendants contend that Plaintiffs' Declaratory Judgment Act argument should be disregarded because Plaintiffs did not raise it in their amended complaint, and are raising it for the first time in their memorandum of law in opposition to the motion to dismiss. (Def. Reply, at 9).

The Court denies the motion to dismiss the third cause of action without prejudice, and grants Plaintiffs leave to file a second amended complaint to include the Declaratory Judgment Act and to address any other issues raised by this Order. Inclusion of a claim under the Declaratory Judgment Act in Plaintiffs' second amended complaint may moot the issue of whether Section 113(g)(2) separately authorizes a declaratory judgment for a Section 113(f) claim as to the Frost Street Sites and EPA OU-1/DEC OU-3. Plaintiffs' second amended complaint shall be filed within thirty (30) days from the date of this Order.

## III. CONCLUSION

For the reasons stated above, the motion to dismiss is **GRANTED** in part and **DENIED** in part. The motion is **GRANTED** as to the second cause of action with respect to Plaintiffs' costs pertaining to the Frost Street Sites and EPA OU-1/DEC OU-3 as to all parties; **DENIED** as to the second cause of action with respect to Plaintiffs' costs pertaining to the Far Field Area; and **DENIED** as to the third cause of action.

The Court also granted Plaintiffs leave to file a second amended complaint, which shall be filed within thirty (30) days from the date of this Order.

**SO ORDERED.**

Dated: September 16, 2019
      Central Islip, New York

                                        /s/ JMA
                                        JOAN M. AZRACK
                                        UNITED STATES DISTRICT JUDGE