UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
101 FROST STREET ASSOCIATES, L.P., NEXT
MILLENNIUM REALTY, LLC,

                Plaintiffs,

    -against-

UNITED STATES DEPARTMENT OF ENERGY;
GTE OPERATIONS SUPPORT INCORPORATED;
GTE SYLVANIA INCORPORATED; SYLVANIA
ELECTRIC PRODUCTS INC.; VISHAY GSI, INC.;
SULZER METCO (US) INC.; MARVEX FINISHING
& PROCESSING CORPORATION; APPLIED
FLUIDICS, INC.; ALLARD INSTRUMENTS CORP.,
*a division of Applied Fluidics, Inc.*; GULF WESTERN
INDUSTRIES INCORPORATED; GULF & WESTERN
MANUFACTURING COMPANY; NAT BASSEN
TEXTILES, INC.; PHYSIO CHEM CORP.;
BRONCO BALTIMORE, INC.; UNICORD, INC.;
KLEARTONE TRANSPARENT PRODUCTS, INC.,

                Defendants.
----------------------------------------------------------------------X

For Online Publication Only

**MEMORANDUM AND ORDER**
17-CV-03585 (JMA) (ARL)

FILED
CLERK

11/24/2020 5:15 pm

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**APPEARANCES:**

Kevin Maldonado
5394 State Route 34
P.O. Box 31
Windham, NY 12496
    *Attorney for Plaintiffs*

John McGahren
Stephanie R. Feingold
Ariel Kapoano
Morgan, Lewis & Bockius LLP
101 Park Avenue
New York, NY 10178
    *Attorneys for the GTE Sylvania Defendants*

Todd M. Hooker
Askin & Hooker LLC
200 Woodport Road Suite A
Sparta, NJ 07871
    *Attorney for Defendant Vishay GSI, Inc.*

**AZRACK, United States District Judge:**

Plaintiffs 101 Frost Street Associates, L.P. and Next Millennium Realty, LLC (collectively, "Plaintiffs") filed a Second Amended Complaint ("SAC") in which they seek cost recovery, contribution, and declaratory relief under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601 et seq.  They bring claims arising from the investigation and remediation of groundwater contamination at certain sites in Nassau County, New York.  (ECF No. 65.)  Defendants GTE Operations Support Incorporated, GTE Sylvania Incorporated, Sylvania Electric Products, Inc., and Vishay GSI, Inc. (collectively, the "Moving Defendants") have moved to dismiss Plaintiffs' Section 113 claims to recover two specific sets of costs.  (ECF No. 83-1.)  For the reasons set forth below, the Court **GRANTS** in part and **DENIES** in part the motion to dismiss.

## I.   BACKGROUND

The Court assumes familiarity with the underlying facts of this case that are set forth in detail in the Court's September 16, 2019 Order on the prior motion to dismiss.  (ECF No. 64.)  Accordingly, the Court recites only the facts necessary to determine the instant motion.

### A.  Procedural History

Previously, the Moving Defendants, along with defendant Sulzer Metro (US) Inc., moved to dismiss Plaintiffs' Amended Complaint.  (ECF No. 50.)  On September 16, 2019, the Court granted in part and denied in part that motion.  (ECF No. 64.)  The Court also granted Plaintiffs leave to file a second amended complaint, which they filed on October 3, 2019.  (ECF No. 65.)

### B.  Plaintiffs' Claims

The Moving Defendants' motion to dismiss is limited to Plaintiffs' claims to recover two specific categories of costs Plaintiffs describe in the SAC: "NYSDEC Deep Groundwater Costs" and "EPA OU-1 Costs."  In its Order on the prior motion to dismiss, this Court held that "because

Plaintiffs can assert a contribution claim under Section 113(f) with respect to the costs incurred at the Frost Street Sites and EPA OU-1/DEC OU-3, all costs pertaining to those areas must be pursued under Section 113(f), including those costs alleged to have been 'voluntarily' incurred prior to the Consent Orders/Modified Consent Order, the UAO, and the NYSDEC OU-3 Settlement." 101 Frost St. Assocs., L.P. v. United States Dep't of Energy, No. 17-CV-3585, 2019 WL 4415387, at *8 (E.D.N.Y. Sept. 16, 2019).

Pursuant to the Court's Order, Plaintiffs have brought their relevant claims under Section 113(f) in the SAC. (ECF No. 65.) However, the Moving Defendants argue that Plaintiffs' claims for recovery of two categories of costs described in the SAC, the NYSDEC Deep Groundwater Costs and the EPA OU-1 Costs, must be dismissed because the Moving Defendants have contribution protection under a consent decree. (ECF No. 83-1 at 13.)

**1. NYSDEC Deep Groundwater Costs**

Plaintiffs are parties to three consent orders reached with the New York State Department of Environmental Conservation (the "NYSDEC") in January 2003. (ECF No. 64 at 2.) In these consent orders, Plaintiffs agreed to remediate contaminated soil and shallow groundwater on and beneath three sites they own, which the Court previously defined as the "Frost Street Sites." (Id.) Ultimately, the three consent orders were amended and consolidated into a Modified Consent Order on December 18, 2016. The Modified Consent Order required Plaintiffs "to conduct the remediation of the deep groundwater under the Frost Street Sites below 165 feet bgs" and to "pay substantial sums to the NYSDEC for historic costs incurred by the NYSDEC and other governmental entities or governmental agents for the NYSDEC Deep Groundwater Remediation under the Frost Street Sites." (SAC, ECF No. 65 at ¶ 6.) According to Plaintiffs, before signing the Modified Consent Order, they incurred significant costs to investigate the deep groundwater

contamination, including engineering, remedial, testing, drilling, and disposal expenses.  (Id.)  The SAC defines these costs they seek to recover as the "NYSDEC Deep Groundwater Costs."  (Id.)

### 2. EPA OU-1 Costs

In 2006, the NYSDEC brought claims to, inter alia, recover the agency's costs for investigating and addressing groundwater contamination at the New Cassel Industrial Area (the "NCIA") in North Hempstead, New York.  (ECF No. 64 at 4.)  Because Plaintiffs owned the Frost Street Sites, which are in the NCIA, Plaintiffs were named as defendants in the NYSDEC's amended complaint.  (Id.)  This litigation ultimately culminated in a series of consent decrees approved by the Hon. Sandra J. Feuerstein.  The Moving Defendants entered into the July 30, 2015 Consent Decree, while Plaintiffs entered into the April 29, 2016 Fourth Supplemental Consent Decree.  These consent decrees specifically addressed the NYSDEC OU-3 site, a 211-acre unit of the New Cassel/Hicksville Ground Water Contamination Superfund Site.  The NYSDEC OU-3 site, which consists of three distinct shallow plumes and a deeper plume, is located downgradient to the NCIA and is alleged to have been contaminated from emanations from the NCIA, including emanations from the Frost Street Sites.  (Id. at 4-5.)

As part of the settlement reached in the litigation before Judge Feuerstein, the Moving Defendants, as "Settling Defendants," received "full and complete contribution protection . . . with regard to the Matters Addressed pursuant to CERCLA § 113(f)(2), 42 U.S.C. § 9613(f)(2)."  (ECF No. 83-4 at ¶ 1.)  The July 30, 2015 Consent Decree defined "Matters Addressed" as:

> [C]laims that were, or could now or hereafter be, asserted by the State against the Settling Defendants arising out of or in connection with the disposal, release, and/or threat of release of hazardous substances at or from the NCIA and/or at or from the sites alleged to have been owned or operated by the Settling Direct Defendants, including but not limited to any and all injuries to natural resources.

(Id. at ¶ 2.)  As the July 30, 2015 Consent Decree explained, however, this definition of "Matters Addressed" contained certain exclusions.  In particular:

> [T]he State's claims for costs (except against the Estate of Daniel Berlin) that may be incurred by the State in the future to the extent that the United States seeks costs from the State for, or the State incurs costs for maintenance of, response actions undertaken by the United States arising out of or in connection with the disposal, release, and/or threat of release of hazardous substances at or from the NCIA and/or at or from the sites alleged to have been owned or operated by the Settling Defendants under CERCLA § 104(c)(3), 42 U.S.C. § 9604(c)(3) and applicable federal regulations and guidance documents or (2) the State's claims for costs against the Upgradient Defendants that may be incurred by the State (but not claims for natural resource damages) in connection with the disposal, release, and/or threat of release of hazardous substances at or from the Upgradient Sites outside of (a) the NCIA or (b) the contaminated groundwater downgradient from the NCIA in the State's OU 3.

(Id.)  Finally, the July 30, 2015 Consent Decree expressly provided that the settling parties would receive contribution protection from each other for the previously-defined "Matters Addressed":

> In consideration of each Settling Defendant's compliance with this Decree, the Parties agree that each Settling Defendant is entitled, as of the Effective Date of this Decree, to the full extent of protection from contribution actions or claims as provided by CERCLA § 113(f)(2), 42 U.S.C. § 9613(f)(2), the Uniform Comparative Fault Act, and any other applicable provision of federal or state law, whether by statute or common law, extinguishing the potential liability of the Settling Defendants to each other and to persons not party to this Decree for the Matters Addressed . . . As provided under CERCLA § 113(f)(2), 42 U.S.C. § 9613(f)(2), the Settling Defendants shall not be liable for claims for contribution with respect to the Matters Addressed.

(Id. at ¶ 27.)  The April 29, 2016 Fourth Supplemental Consent Decree, which Plaintiffs entered, included nearly identical provisions regarding the "Matters Addressed," but were modified based on the parties entering this specific consent decree.[1]

---

[1] Like the July 30, 2015 Consent Decree, the April 29, 2016 Fourth Supplemental Consent Decree, to which Plaintiffs were a party, defined "Matters Addressed" as:

> [C]laims that were, or could now or hereafter be, asserted by the State against the Frost Street Defendants arising out of or in connection with the disposal, release, and/or threat of release of hazardous substances at

5

In 2010, the NYSDEC referred the DEC OU-3 site to the Environmental Protection Agency (the "EPA") for listing on the National Priorities List Site. (ECF No. 64 at 3 n.2.) This list "is intended primarily to guide the EPA in determining which sites warrant further investigation" and contains those "sites of national priority among the known releases or threatened release of hazardous substances, pollutants, or contaminants throughout the United States and its territories." (Id.) (citation omitted). In 2011, the EPA listed the DEC OU-3 site as "EPA OU-1" and "assumed and concomitantly relieved the State of the responsibility for remediating the groundwater contamination thereon." (Id.) Ultimately, the EPA issued a Unilateral Administrative Order on March 22, 2018, directing Plaintiffs "to implement remedial investigation and design for the shallow and deeper portion of the Eastern Plume in EPA OU-1/DEC OU-3." (Id. at 3.) This Order was later amended to direct Plaintiffs to "implement an additional remedial investigation and design for the plumes, except for certain initial sampling of existing wells, which the EPA will conduct." (Id.)

According to the SAC, Plaintiffs have incurred various costs related to the remediation, investigation, design, and negotiation of the relevant consent orders regarding EPA OU-1. These

---

or from the NCIA and/or at or from the sites alleged to have been owned or operated by the Frost Street Defendants, including but not limited to any and all injuries to natural resources.

(Id. at ¶ 2.) Excluded from this definition of "Matters Addressed" was:

the State's claims for costs (except against the Estate of Emily Spiege1) that may be incurred by the State in the future to the extent that the United States seeks costs from the State for, or the State incurs costs for maintenance of, response actions undertaken by the United States arising out of or in connection with the disposal, release, and/or threat of release of hazardous substances at or from the NCIA and/or at or from the Frost Street Sites under CERCLA § 104(c)(3), 42 U.S.C. § 9604( c )(3) and applicable federal regulations and guidance documents (hereinafter, "EPA Section 104 Costs"); and (2) the State's claims for response costs (except against the Estate of Emily Spiegel) incurred or to be incurred that arise out of or in connection with the disposal, release, and/or threat of release of hazardous substances at or from the Frost Street Sites with respect to Operable Units 1 and/or 2 ("OU-1" and "OU-2") of the Frost Street Sites (as defined in the March 2000 Records of Decision for OU- 1 and OU-2 ("OU-1 and OU-2 RODs") of the Frost Street Sites, Site Numbers 1-30-043 I, L, and M and future modifications of the OU-1 and OU-2 RODs approved by the Department, if any) (hereinafter, "DEC OU-1/OU-2 Costs").

6

have included engineering, remedial, testing, drilling, design, and investigation costs, as well as the costs of operating a pump and discharge system. (SAC, ECF No. 65 at ¶¶ 19-22.) In the SAC, Plaintiffs describe these costs they seek to recover as the "EPA OU-1 Costs." (Id.)

## II.     DISCUSSION

In the instant motion, the Moving Defendants contest Plaintiffs' ability to recover the NYSDEC Deep Groundwater Costs and the EPA OU-1 Costs under Section 113. The Moving Defendants, however, have reserved their rights and have not moved to dismiss Plaintiffs' Section 107 claim for "Voluntary EPA Far Field Costs." (ECF No. 83-1 at 3.)

### A. Standard of Review

The Moving Defendants move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). To survive a motion to dismiss brought under this Rule, a plaintiff must allege sufficient facts "to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is facially plausible only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). Mere labels and legal conclusions will not suffice. Twombly, 550 U.S. at 555.

In reviewing the motion, the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006). When deciding a motion to dismiss, a court may consider materials attached to the complaint, materials integral to the complaint, and materials incorporated into the complaint by reference. Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004). Such materials may include a consent decree, which is a "publicly available document of which

the Court may take judicial notice." Wendrovsky v. Chase Paymentech, No. 12-CV-704, 2012 WL 13042574, at *7 (S.D.N.Y. Oct. 15, 2012).

**B. Application**

The Moving Defendants' entire motion to dismiss is premised on the argument that the July 30, 2015 Consent Decree provides contribution protection from Plaintiffs' claims to recover the NYSDEC Deep Groundwater Costs and EPA OU-1 Costs. For purposes of the instant motion, the Court takes judicial notice of the July 30, 2015 Consent Decree. When interpreting a consent decree, a court must apply "ordinary rules of contract interpretation." United States ex rel. Anti-Discrimination Ctr. of Metro New York, Inc. v. Westchester Cty., N.Y., 712 F.3d 761, 767 (2d Cir. 2013). These rules include deference to the "plain meaning" of the consent decree, including the "normal usage of the terms selected." Berger v. Heckler, 771 F.2d 1556, 1568 (2d Cir. 1985).

The July 30, 2015 Consent Decree provides:

> the Parties agree that each Settling Defendant is entitled, as of the Effective Date of this Decree, to the full extent of protection from contribution actions or claims as provided by CERCLA § 113(f)(2), 42 U.S.C. § 9613(f)(2), the Uniform Comparative Fault Act, and any other applicable provision of federal or state law, whether by statute or common law, extinguishing the potential liability of the Settling Defendants to each other and to persons not party to this Decree for the Matters Addressed . . . As provided under CERCLA § 113(f)(2), 42 U.S.C. § 9613(f)(2), the Settling Defendants shall not be liable for claims for contribution with respect to the Matters Addressed.

(ECF No. 83-4 at ¶ 27.) "Matters Addressed" is defined as:

> [C]laims that were, or could now or hereafter be, asserted by the State against the Settling Defendants arising out of or in connection with the disposal, release, and/or threat of release of hazardous substances at or from the NCIA and/or at or from the sites alleged to have been owned or operated by the Settling Defendants, including but not limited to any and all injuries to natural resources.

(Id. at ¶ 2.) As the July 30, 2015 Consent Decree explains, this definition of "Matters Addressed" excludes:

8

> [T]he State's claims for costs (except against the Estate of Daniel Berlin) that may be incurred by the State in the future to the extent that the United States seeks costs from the State for, or the State incurs costs for maintenance of, response actions undertaken by the United States arising out of or in connection with the disposal, release, and/or threat of release of hazardous substances at or from the NCIA and/or at or from the sites alleged to have been owned or operated by the Settling Defendants under CERCLA § 104(c)(3), 42 U.S.C. § 9604(c)(3) and applicable federal regulations and guidance documents or (2) the State's claims for costs against the Upgradient Defendants that may be incurred by the State (but not claims for natural resource damages) in connection with the disposal, release, and/or threat of release of hazardous substances at or from the Upgradient Sites outside of (a) the NCIA or (b) the contaminated groundwater downgradient from the NCIA in the State's OU 3.

(Id.)  The Moving Defendants argue that this language provides contribution protection from Plaintiffs' claims to recover both the NYSDEC Deep Groundwater Costs and EPA OU-1 Costs.

**1. NYSDEC Deep Groundwater Costs**

The Court agrees that the July 30, 2015 Consent Decree expressly provides contribution protection for the Moving Defendants from Plaintiffs for the NYSDEC Deep Groundwater Costs. The Moving Defendants are "settling defendants" for purposes of the July 30, 2015 Consent Decree. Accordingly, they are entitled "to the full extent of protection from contribution actions or claims as provided by CERCLA § 113(f)(2)" and "shall not be liable for claims for contribution with respect to the Matters Addressed."  (Id. at ¶ 27.)  The NYSDEC Deep Groundwater Costs are covered by the "Matters Addressed" since they are claims "arising out of or in connection with the disposal, release, and/or threat of release of hazardous substances at or from the NCIA and/or at or from the sites alleged to have been owned or operated by the Settling Defendants."  (Id. at ¶ 2.) Accordingly, the Moving Defendants have contribution protection under the July 30, 2015 Consent Decree.  Indeed, Plaintiffs' opposition does not contest the Moving Defendants' argument on this issue, and the Court construes them to have waived this issue.  The Court therefore dismisses the claims in the SAC to recover the NYSDEC Deep Groundwater costs.

## 2. EPA OU-1 Costs

The Moving Defendants also argue that the EPA OU-1 Costs are covered by the July 30, 2015 Consent Decree because this claim, "premised on alleged contamination from the Upgradient Sites causing impacts to the Easter Plume . . . plainly 'aris[es] out of or in connection with the disposal, release, and/or threat of release of hazardous substances at or from . . . the Upgradient Sites.'" (ECF No. 83-1 at 16 (alteration in original).)  Plaintiffs, however, contend that claims brought by the EPA were intentionally excluded from the definition of "Matters Addressed." (ECF No. 83-6 at 1.)  They point to "both the explicit language of the Consent Decrees and the circumstances surrounding the formation of the Consent Decrees [that] clearly, and unambiguously, limit the Consent Decrees to State claims and exclude any contribution claims for costs associated with the United States." (Id. at 7.)  The Court agrees with Plaintiffs' interpretation of the July 30, 2015 Consent Decree.  Accordingly, Plaintiffs' claims in the SAC related to the EPA OU-1 Costs can proceed.

The July 30, 2015 Consent Decree is clear that the "Matters Addressed" are limited to "[c]laims that were, or could now or hereafter be, asserted by the State against the Settling Defendants." (ECF No. 83-4 at ¶ 2 (emphasis added).)  Likewise, the list of matters excluded from the "Matters Addressed" are again limited to the State, i.e. "The State's claims for costs . . ." (Id.) (emphasis added).  The language in the later consent decrees from the same litigation, including the one entered into by Plaintiffs, also limited the "Matters Addressed" to claims brought by the State. (ECF No. 83-5 at ¶ 2.)  Indeed, as this Court previously observed regarding the June 1, 2016 Consent Decree in its Order on the prior motion to dismiss:  "In other words, the NYSDEC OU-3 Settlement covers any claims the State could assert against Next Millennium and Frost Street Associates pertaining to contamination at or emanating from sites in the NCIA, including

10

contamination at or emanating from the Frost Street Sites into, for example, EPA OU-1/DEC OU-3." 101 Frost St., 2019 WL 4415387, at *3.  The "plain meaning" and "normal usage" of these terms are clear that the July 30, 2015 Consent Decree only applies to claims that were brought, or could be brought, by New York State.  Claims brought by the EPA are not included in the terms of the July 30, 2015 Consent Decree.  Additionally, Plaintiffs point to several pieces of contemporaneous evidence from the filings and arguments made in the litigation in which the consent decrees originated.  (ECF No. 83-6 at 8.)  While the Court finds this evidence persuasive that costs related to the EPA were intentionally excluded from the language used in the consent decrees because any EPA claims were not yet ripe, the Court need not rely on this extrinsic evidence for purposes of interpreting the July 30, 2015 Consent Decree.  The relevant language is clear: claims brought by the EPA are not included.

In reply, the Moving Defendants argue that the EPA's claims are covered by the July 30, 2015 Consent Decree because "these are precisely the types of claims that 'could now or hereafter be' asserted by the State." (ECF No. 83-16 at 2.)  The Moving Defendants assert that this language "provides contribution protection against any claims associated with this area of contaminated groundwater," regardless of what party is bringing those claims.  (Id. at 3.) (emphasis in original). That interpretation, however, defies the plain language of the consent decree.  Under the interpretation proposed by the Moving Defendants, any possible claim relating to the site at issue would be covered, regardless of the party bringing the claim or even if that party is not a party to the consent decree.  That is not what the terms of the consent decree state, however.

To support this interpretation, the Moving Defendants argue that Plaintiffs' proposed interpretation conflicts with the customary practice in environmental settlements.  They contend that "[p]arties routinely enter into consent decrees with both state environmental agencies and the

11

United States Environmental Protection Agency," and therefore the consent decree should be interpreted to cover claims brought by either New York State or the EPA. (ECF No. 83-16 at 4.) While such consent decrees with both agencies may indeed be routine, that is not the case here where the terms of the July 30, 2015 Consent Decree only address claims brought by New York.

Furthermore, the out-of-circuit district court case the Moving Defendants cite in support of their position was recently reversed and remanded, and the Third Circuit's analysis on appeal is relevant here. See New Jersey Dep't of Envtl. Prot. v. Am. Thermoplastics Corp., 974 F.3d 486, 494-95 (3d Cir. 2020). In that case, a polluting party reached a settlement with the State of New Jersey and later argued that the settlement provided protection from subsequent lawsuits seeking contribution toward expenditures made by the EPA to remediate the same site. Id. Ultimately, the Third Circuit rejected that argument, analyzing the consent decree at issue "in a manner consistent with both the reasonable expectations of the signatories and the equitable apportionment of costs that Congress has envisioned." Id. (citation omitted). Though the language in the consent decree was broad because it did not contain an explicit "matters addressed" section, it specifically dealt only with state expenditures on the site and not the EPA. The court reasoned that it should "interpret the matters addressed in an agreement narrowly when determining whether settlement with one sovereign covers the claims of another." Id.

The same logic applies to the instant case as well. Not only is there an explicit "Matters Addressed" section of the July 30, 2015 Consent Decree that details what is and is not included, but the relevant provisions use clear language to cover state claims only. The Moving Defendants, however, argue that such an interpretation "def[ies] logic" and would undermine CERCLA's incentive structure. (ECF No. 83-16 at 5.) However, as the Third Circuit explained in rejecting a similar argument, CERCLA's goal is "equitably distributing liability" between parties. Am.

Thermoplastics, 974 F.3d at 496. Rejecting the Moving Defendants' proposed interpretation "avoids creating perverse incentives for a PRP ["potentially responsible party"] to resolve those claims only in the hope of barring other PRPs from seeking contribution on federal claims" and instead encourages parties to seek a settlement that includes "both the relevant State and Federal Governments." Id.

Accordingly, the Court does not find that the claims related to the EPA are included in the language of the July 30, 2015 Consent Decree, which only explicitly covered claims brought by New York State. Plaintiffs' claims for cost recovery of the EPA OU-1 Costs shall proceed.

### III.  CONCLUSION

For the reasons stated above, the motion to dismiss is **GRANTED** in part and **DENIED** in part. The motion is **GRANTED** as to recovery of Plaintiffs' NYSDEC Deep Groundwater Costs and **DENIED** as to the EPA OU-1 Costs.

**SO ORDERED.**

Dated: November 24, 2020
　　　　Central Islip, New York

　　　　　　　　　　　　　　　　　　　　　　　　  /s/ (JMA)
　　　　　　　　　　　　　　　　　　　　　　　　JOAN M. AZRACK
　　　　　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE