UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
101 FROST STREET ASSOCIATES, L.P.;
NEXT MILLENNIUM REALTY, LLC,

                              Plaintiffs,                                   **REPORT AND**
                                                                            **RECOMMENDATION**
                                                                               17-CV-3585 (JMA) (ARL)

      -against-


UNITED STATES DEPARTMENT OF
ENERGY; *et al.*,

                              Defendants.
------------------------------------------------------------------X

**LINDSAY, Magistrate Judge:**

       Plaintiffs 101 Frost Street Associates, L.P. and Next Millennium Realty, LLC (collectively, "Plaintiffs") filed the complaint this action in which they seek cost recovery, contribution, and declaratory relief under the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601 et seq. ("CERCLA"). On December 29, 2020, Defendant and Third-Party Plaintiffs GTE Operations Support Incorporated ("GTEOSI"), GTE Sylvania Incorporated and Sylvania Electric Products (collectively "GTE/Sylvania") filed an Amended Answer and Affirmative Defenses, Counterclaims, Amended Cross-Claims, and Third-Party Complaint ("Third-Party Complaint"). ECF No. 94. Defendant, the United States Department of Energy ("DOE"), and Third-Party Defendant, the United States of America ("United States") (collectively, the "Federal Defendants"), move to dismiss claims that GTE/Sylvania has asserted under Sections 107 of CERCLA for costs allegedly incurred or to be incurred investigating and cleaning up contamination associated with property located at 70, 100 and 140 Cantiague Rock Road in Hicksville, New York (the "Sylvania Site") as well as to dismiss GTE/Sylvania's claim for declaratory judgment. This motion was referred to the undersigned

by District Judge Azrack. For the reasons set forth below, the undersigned respectfully recommends that the motion to dismiss be denied.

## BACKGROUND

### A. Procedural Background

On June 14, 2017, Plaintiffs commenced this action against, the DOE, GTE/Sylvania, and others, seeking contribution under Section 113(f), cost recovery under Section 107(a), and declaratory relief pursuant to Sections 107(a)(4)(B) and 113(g)(2) arising from the investigation and remediation of groundwater contamination at certain sites in Nassau County, New York. ECF No. 1. On June 28, 2018, Plaintiffs filed an amended complaint. ECF No. 46. On August 30, 2018, GTE/Sylvania filed a motion to dismiss the amended complaint. ECF No. 50. On September 16, 2019, Judge Azrack granted in part and denied in part the motion ("2019 Opinion"). ECF No. 64.

Plaintiffs filed a second amended complaint on October 3, 2019. ECF No. 65. The DOE answered the second amended complaint on December 18, 2019. ECF No. 74. Following a pre-motion conference request, Judge Azrack set a briefing schedule and GTE/Sylvania filed a motion to dismiss the second amended complaint on February 14, 2020. ECF No. 83. Judge Azrack granted in part and denied in part the motion on November 24, 2020 ("2020 Opinion"). ECF No. 89. GTE/Sylvania filed is answer to the second amended complaint, along with cross claims on December 8, 2020. ECF No. 91. On December 29, 2020, GTE/Sylvania filed an Amended Answer and Affirmative Defenses, Counterclaims, Amended Cross-Claims, and Third-Party Complaint ("Third-Party Complaint"). ECF No. 94. The Third-Party Complaint, names the United States as a Defendant. *Id*.

Following a pre-motion conference request made by the Federal Defendants, Judge Azrack set a briefing schedule and the Federal Defendants filed the instant motion to dismiss

certain of the claims asserted in the cross claims and Third-Party Complaint on December 9, 2021. ECF No. 125. GTE/Sylvania opposes the motion. By Order dated April 28, 2022, this motion was referred to the undersigned by Judge Azrack.

### A. Factual Background

The following facts are drawn from the Complaint and are accepted as true for purposes of the instant motion. *Samuels v. Air Transp. Local 504*, 992 F.2d 12, 15 (2d Cir. 1993). These facts, however, do not constitute findings of fact by the Court. *See Colvin v. State University College at Farmingdale*, No. 13-CV-3595 (SJF)(ARL), 2014 U.S. Dist. LEXIS 85678, 2014 WL 2864224, at *1 n.1 (E.D.N.Y. June 19, 2014). Additionally, the Court assumes familiarity with many of the underlying facts of this case that are set forth in detail in Judge Azrack's September 16, 2019 Order and November 24, 2020 Order on the prior motions to dismiss. ECF Nos. 64, 89. The Court recites only the facts necessary to determine the instant motion.

Presently before the Court are three claims which GTE/Sylvania brings against the Federal Defendants. On December 29, 2020, GTE/Sylvania filed an amended answer and affirmative defenses to Plaintiffs' Second Amended Complaint which included amended cross-claims against the DOE and a third-party complaint against the United States. GTE/Sylvania asserts three cause of action against the Federal Defendants. Plaintiffs seek to recover their voluntarily incurred response costs under Section 107(a) of CERCLA for the cleanup of contamination that "resulted from the use of the [Sylvania] Site to produce uranium fuel elements and other products for the federal government's early nuclear weapons program, under the direction and control of the" DOE. Pl. Mem. at 1; Cross Claim ¶¶ 45-60; Third-Party Complaint ¶¶ 5-20. In the second cause of action, GTE/Sylvania seeks contribution under Section 113(f)(1) of CERCLA in the event the GTE/Sylvania is adjudged liable to Plaintiffs or

3

any other party for the costs related to releases or threatened releases of hazardous substances from EPA OU-1 and the EPA Far Field areas. Cross Claim ¶ 64; Third-Party Complaint ¶ 24. In the third cause of action, GTE/Sylvania seeks a declaratory judgment, under CERCLA §§ 107(a)(4)(B) and 113(g)(2), and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, against the Federal Defendants declaring that the Federal Defendants are and shall be liable to GTE/Sylvania for any response costs and for contribution claims. Cross Claim ¶ 67; Third-Party Complaint ¶¶ 27.

## DISCUSSION

### I. Standard of Review - Motion to Dismiss - Rule 12(b)(6)

The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), in which the court set forth a two-pronged approach to be utilized in analyzing a motion to dismiss. District courts are to first "identify [ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a [d]efendant has acted unlawfully." *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007) (internal citations omitted)).

For the purposes of a Rule 12(b) motion, "a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or

incorporated by reference, and to matters of which judicial notice may be taken." *Serdarevic v. Centex Homes, LLC,* 760 F. Supp. 2d 322, 328 (S.D.N.Y. 2010) (quotation omitted); *see Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002). "[I]n some cases, a document not expressly incorporated by reference in the complaint is nevertheless 'integral' to the complaint and, accordingly, a fair object of consideration on a motion to dismiss." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016). In addition, "'[a] court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.'" *Global Network Commns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) (quoting *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998)).

Here, the Federal Defendants' motion to dismiss is predicated entirely upon two agreements outside of the complaint: the Agreement between the New York State Department of Environmental Conservation ("Department") and GTEOSI, dated April 7, 1999 (the "1999 Agreement") and the Voluntary Cleanup Agreement between the Department and GTEOSI, dated January 6, 2003 (the "2003 VCA"). ECF No. 125-2. Both agreements have been submitted in support of the Federal Defendants' motion to dismiss and neither the Federal Defendants nor GTE/Sylvania have addressed whether it is appropriate for the Court to consider these documents on a motion to dismiss.

"[T]he general rule is that a district court may not look outside the complaint and the documents attached thereto in ruling on a Rule 12(b) motion to dismiss." *Staehr v. Hartford Fin. Servs. Group, Inc.*, 547 F.3d 406, 425 (2d Cir. 2008). However, the court "may also consider matters of which judicial notice may be taken." *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991). Federal Rule of Evidence 201 authorizes a court to "judicially notice a fact that

5

is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned . . . at any stage in the proceeding," including on a motion to dismiss. *See, e.g., Kramer*, 937 F.2d at 773; *Manta Indus., Ltd. v. TD Bank, N.A.*, No. 17-CV-2495, 2018 U.S. Dist. LEXIS 55073, 2018 WL 2084167, at *6 ("In the Rule 12(b)(6) context, a court may take judicial notice of prior pleadings, orders, judgments, and other related documents that appear in the court records of prior litigation and that relate to the case sub judice. . . . In taking judicial notice of documents or information in this setting, however, a court should do so only for the fact that they exist and what is in them, but not for their truth, because they are public documents") (internal quotation marks and alterations omitted). Here, neither party has objected to the attachments. Thus, as recognized by Judge Azrack in the 2020 Opinion, this Court can judicially notice the 1999 Agreement and the 2003 VCA. *See* 2020 Opinion at 8.

## II.     CERCLA Section 107 Claim

"CERCLA is a comprehensive federal law governing the remediation of Sites contaminated with pollutants." *Consol. Edison Co. of N.Y. v. UGI Utils., Inc.,* 423 F.3d 90, 94 (2d Cir. 2005). CERCLA's "primary purposes are axiomatic: (1) to encourage the timely cleanup of hazardous waste Sites; and (2) to place the cost of that cleanup on those responsible for creating or maintaining the hazardous condition." *W.R. Grace & Co.-Conn. v. Zotos Int'l, Inc.* 559 F.3d 85, 88 (2d Cir. 2009) (internal quotation marks and citations omitted). "To effectuate these goals, CERCLA looks backward in time and imposes wide-ranging liability." *Marsh v. Rosenbloom,* 499 F.3d 165, 178 (2d Cir. 2007). Thus, absent the availability of one of CERCLA's affirmative defenses, "the statute imposes strict liability on owners and facility operators, on persons who arranged for the disposal or treatment of hazardous waste at the

relevant site, and on persons who transported hazardous waste to the site," often collectively referred to as potentially responsible parties.[1]  *Price Trucking Corp. v. Norampac Indus., Inc.*, 748 F.3d 75, 79 (2d Cir. 2014) (citing 48 U.S.C. § 9607(a)(1)-(4)).  CERCLA, however, "provide[s] property owners an avenue of reprieve; it allows them to seek reimbursement of their cleanup costs from others in the chain of title or from certain polluters – the so-called potentially responsible parties." *Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc.,* 596 F.3d 112, 120 (2d Cir. 2010).  Under CERCLA, "private parties who engage in cleanup activity can recover costs associated with such actions by bringing claims under either section 107(a) or section 113(f) of CERCLA against 'potentially responsible parties' ('PRPs')." *New York State Elec. & Gas Corp. v. FirstEnergy Corp.*, 766 F.3d 212, 220 (2d Cir. 2014).  Under section 107(a), "a property owner or operator who has spent money on cleaning up hazardous waste may seek reimbursement for cleanup costs from other PRPs . . . limited to the 'necessary costs of response . . . consistent with the national contingency plan.'" *Id.* (quoting 42 U.S.C. § 9607(a)(4)(B)).  Under section 113(f), "'[a]ny person may seek contribution from any other person who is liable

---

[1]CERCLA defines four classes of persons as potentially responsible parties:

> (1) the owner and operator of a vessel or facility, (2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of, (3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and (4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or Sites selected by such person from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance.

42 U.S.C. § 9607(a)(1)-(4).

or potentially liable under [section 107(a) ] during or following any civil action under section 9606 of this title or under section 9607(a) of this title.'" *Id.* (quoting 42 U.S.C. § 9613(f)(1)).

The Federal Defendants argue that GTE/Sylvania's Section 107 claims (asserted as a crossclaim against the DOE and a Third-Party claim against the United States) for costs for its investigation and remediation of the Sylvania Site must be dismissed because Section 113 is GTE/Sylvania's exclusive recourse. According to the Federal Defendants, GTE/Sylvania's claim falls within the terms of Section 113 because GTEOSI, as the current owner and "corporate successor to affiliated former owners and operators of the Site," entered into two voluntary settlement agreements with the NYDEC that resolved its liability to the State—thereby triggering Section 113(f)(3)(B).

Section 113 provides PRPs who have been sued under Section 107 with a right of contribution from other PRPs and also provides a right of contribution to PRPs that have settled their CERCLA liability with a state or the United States through either an administrative or judicially approved settlement. *Niagara Mohawk Power Corp.*, 596 F.3d at 121 (citing 42 U.S.C. § 9613(f)(3)(B), (f)(1)). "Once Section 113(f) is "trigger[ed]" for a particular claim, it becomes the plaintiff's 'exclusive avenue for relief.'" *New York v. Crescent Group Realty*, 17-CV-6739 (JMA) (AYS), 2020 U.S. Dist. LEXIS 222743, at *4-*5 (E.D.N.Y. Nov. 30, 2020) (quoting *101 Frost St. Assocs., L.P. v. United States DOE*, No. 17-CV-3585, 2019 U.S. Dist. LEXIS 159178, 2019 WL 4415387, at *10 (E.D.N.Y. Sept. 16, 2019)).

However, Section 113(f) creates "a contribution right only when liability for CERCLA claims, rather than some broader category of legal claims, is resolved." *Consol. Edison Co. v. U.G.I. Utils., Inc.*, 423 F.3d at 95. In *Territory of Guam v. United States*, 593 U.S. __, 141 S.Ct. 1608, 1611, 209 L. Ed. 2d 691 (2021), the Supreme Court determined that "[a] settlement must

8

resolve a CERCLA liability to trigger a contribution action under §113(f)(3)(B)." *Id*. In denying the United States' motion to dismiss Plaintiff's CERCLA claim under Section 107, the Court noted that "this §113(f) family of contribution provisions anticipates a predicate CERCLA liability." *Id*.[1]

Although not addressed by the parties in the instant action, the first inquiry must be a review of the releases provided in the 1999 Agreement and 2003 VCA to determine if GTE/Sylvania was released from CERCLA liability. *See, e.g., DMJ Assocs., LLC v. Capasso*, 181 F. Supp. 3d 162, 168 (E.D.N.Y 2016) (the operative question is whether CERCLA liability has been resolved). The 1999 Agreement was between the Department and GTEOSI and covered the property which is located at 70,100 and 140 Cantiague Rock Road, Hicksville, New York. Declaration of Thomas Price dated August 25, 2021 ("Price Dec"), Ex. A. Pursuant to the terms of the 1999 Agreement GTEOSI agreed to "investigate soil and groundwater chemical and radiological contamination on-Site and off-Site impacts caused by the on-Site contamination to allow for the continued light industrial use of the Site." *Id*. "The Department and [GTEOSI] agree that the goals of this Agreement are for [GTEOSI] to, (i) implement the Department-approved investigation program for the Site; and (ii) reimburse the State's administrative costs as provided in this Agreement." *Id*. The 1999 Agreement did not contain any release language and did not resolve any liability on the part of GTE/Sylvania under CERCLA. *See id*. "When interpreting a consent decree, a court must apply 'ordinary rules of contract interpretation.'" 2020 Opinion (citing *United States ex rel. Anti-Discrimination Ctr. of Metro New York, Inc. v. Westchester Cty., N.Y.*, 712 F.3d 761, 767 (2d Cir. 2013). "These rules include deference to the 'plain meaning' of the consent decree, including the 'normal usage of the terms selected.'" *Id.* (quoting *Berger v. Heckler,* 771 F.2d 1556, 1568 (2d Cir.

---

[1] In *Territory of Guam,* 593 U.S. at ---, 141 S. Ct. at 1612-13, the plaintiff had entered a consent decree resolving claims asserted against the plaintiff under the Clean Water Act and subsequently brought an action under CERCLA for costs.

1985). Because the 1999 Agreement did not contain any release language, or in any way address potential liability under CERCLA the plain meaning of the agreement is that it did not resolve CERCLA liability and therefore it could not trigger Section 113.

The 2003 VCA is between the Department and GTEOSI. Price Dec., Ex. B. By its terms the 2003 VCA applies to the property located at 140 Cantiague Rock Road, Hicksville, New York (this agreement does not mention the properties at 70 or 100 Cantiague Rock Road). Unlike the 1999 Agreement, the 2003 VCA did contain release language. The 2003 VCA provides that once the Department determines that GTEOSI has satisfied certain conditions a release in the form attached as Exhibit C to the Agreement would be provided. The release attached as Exhibit C states

> The Department, therefore, hereby releases, covenants not to sue, and shall forbear from bringing any action, proceeding, or suit pursuant to the [NY] Environmental Conservation Law, the NL [Navigation Law] or the State Finance Law, and from referring to the Attorney General any claim for recovery of costs incurred by the Department, against Volunteer

Price Dec., Ex. B., at Exhibit C. There is no mention of the release of any federal statutory or other claim. The Environmental Protection Agency ("EPA") is not a party to this agreement. As recognized by the Second Circuit, "'[w]here a state proceeds on its own authority to identify a remedy and settle with a [potentially responsible party], there is a risk that the EPA will take later actions or select different remedies that could expose the [potentially responsible party] to additional liabilities.'" *W.R. Grace & Co.- Conn. v. Zotos Int'l, Inc.*, 559 F.3d at 91 (quoting *Grace*, 2005 U.S. Dist. LEXIS 8755, 2005 WL 1076117, *5).

The Court in *Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc.*, 596 F.3d 112 provided an instructive analysis of two very different types of releases. In the first, the Voluntary Cleanup Agreement by its terms only absolved state liability and did not reference CERCLA. 596 F.3d at 125 (citing *Consol. Edison Co. v. U.G.I. Utils., Inc.*, 423 F.3d at 97. In

10

accordance with Second Circuit precedent, this type of release did not trigger Section 113 contribution rights. *See, e.g., Consol. Edison Co.*, 423 F.3d at 97 (rights reserved by the DEC "[left] open the possibility that the [DEC] might still seek to hold ConEd liable under CERCLA" and therefore, because ConEd could still be sued under CERCLA, it was not entitled to bring an action under § 113(f)(3)(B));  *W.R. Grace & Co.- Conn. v. Zotos Int'l, Inc*., 559 F.3d 85, 91 (2d Cir. 2009) (a PRP could not bring an action for contribution against another PRP under § 113(f)(3)(B) based on its settlement with the DEC because the DEC settlement "ma[de] no reference to CERCLA, [and] establishe[d] that the DEC settled only its state law claims against [the PRP], leaving open the possibility that the DEC or the EPA could, at some future point, assert CERCLA or other claims"); *see also Premcor Ref. Grp. Inc. v. Apex Oil Co.,* No. 3:17-CV-738-NJR, 2020 U.S. Dist. LEXIS 43724 (S.D. Ill. Mar. 13, 2020) ("the Apex Consent Order is best read as completely resolving Apex's liability to the State of Illinois but barring suits for contribution solely under the Illinois laws involved in the Madison County Proceeding, not CERCLA").

In the second type of release "the remedial activities performed by [Plaintiff] were consideration for 'a  release and covenant not to sue . . . which [DEC] has or may have pursuant to . . . State or Federal statutory or common law involving or relating to investigative or remedial activities relative to or arising from the disposal of hazardous wastes or hazardous substances.'" *Niagara Mohawk,* 596 F.3d at 126.  The first type of release does not trigger Section 113 contribution rights because no reference is made in the release to any CERCLA claim, while the second type of release does trigger Section 113 because it expressly releases federal statutory claims.  *Id.*

The language in the release attached as Exhibit C to the 2003 VAC in this action is

11

virtually identical to that which the Second Circuit relied upon in *Consol. Edison Co.*, 423 F.3d at 97. As noted above, there is no mention of the release of any federal statutory or other claim. In *Consol. Edison Co. v. U.G.I. Utils., Inc.*, 423 F.3d at 96 the Court pointed out that "[t]he Release and Covenant Not to Sue states that the Department 'releases, covenants not to sue, and shall forebear from bringing any action, proceeding, or suit pursuant to the [New York] Environmental Conservation Law, the Navigation Law or the State Finance Law, and from referring to the Attorney General any claim for recovery of costs incurred by the Department . . . for the further investigation and remediation of the Site, based upon the release or threatened release of Covered Contamination.' This language makes clear, contrary to Con Ed's contentions, that the only liability that might some day be resolved under the Voluntary Cleanup Agreement is liability for state law-not CERCLA-claims." *Id*. This is precisely the language contained in the 2003 VCA Agreement. In the 2003 VCA the release only gave up claims pursuant to the Environmental Conservation Law, the Navigation Law or the State Finance Law. Price Dec., Ex. B at Exhibit C.

> As the Federal Defendants point out, the 2003 VCA also provides that
>
> Except as provided in Subparagraph XIV.O., and to the extent authorized under 42 U.S.C. Section 9613, New York General Obligations Law Section 15-108, and any other applicable law, Volunteer shall be deemed to have resolved its liability to the State for purposes of contribution protection provided by CERCLA Section 113(f)(2) for "matters addressed" pursuant to and in accordance with this Agreement. "Matters addressed" in this Agreement shall mean all response actions taken to implement this Agreement for the Site and all response costs incurred and to be incurred by any person or party in connection with the work performed under this Agreement, including reimbursement of the State's costs pursuant to this Agreement.

Price Dec., Ex. B at XIV.1. However, as discussed above, this agreement resolved only State claims and did not address any federal claims, and thus, "matters addressed" refers only to claims pursuant to the Environmental Conservation Law, the Navigation Law or the State

12

Finance Law and does not somehow add a CERCLA claim to the release.

This reading of the 2003 VCA is supported by several other provisions of the agreement itself. The 2003 VCA reserved the right of the Department

> Except as provided in the Release and Covenant Not to Sue (Exhibit "C") after its issuance and except as provided in Subparagraph VII.A.2, nothing contained in this Agreement shall be construed as barring, diminishing, adjudicating, or in any way affecting any of the Department's rights or authorities, including, but not limited to, the right to recover natural resource damages, the right to take any investigatory or remedial action deemed necessary, and the right to exercise summary abatement powers with respect to any party, including Volunteer.

Price Dec. Ex. B at VII, A, 1. Therefore, in accordance with the 2003 VCA, the Department did not give up the right to pursue any claims not mentioned in the release, which would include a CERCLA claim, since the release only gave up claims pursuant to the Environmental Conservation Law, the Navigation Law or the State Finance Law. The Second Circuit consider an identical provision in *Consol. Edison Co. v. U.G.I. Utils., Inc.*, 423 F.3d at 96. The court determined that "[t]he state agency also reserved the 'right to take any investigatory or remedial action deemed necessary as a result of a significant threat resulting from the Existing Contamination or to exercise summary abatement powers." *Id*. at 96-97. The court opined that the rights reserved by the Department "[left] open the possibility that the [Department] might still seek to hold ConEd liable under CERCLA" and therefore, because ConEd could still be sued under CERCLA, it was not entitled to bring an action under § 113(f)(3)(B). *Id*. at 97.

Additionally, the 2003 VCA provides that

> Except for the Department's right to take any investigatory or remedial action deemed necessary as a result of a significant threat resulting from the Existing Contamination or to exercise summary abatement powers, the Department shall not take any enforcement action under ECL Article 27, Title 13, under CERCLA, under the NL, or under comparable statutory or common law theories of remedial liability with respect to the Existing Contamination, to the extent that such contamination is being addressed under the Agreement, against Volunteer or Volunteer's grantees, successors or assigns during the implementation of this Agreement, provided such party is in compliance with

13

> the terms and provisions of this Agreement, including, without limitation, the requirements of all Work Plans and amendments thereto.

Price Dec., Ex. B at VII, A, 2.  Thus, the Department gave up its right to pursue a CERCLA claim only during the implementation of the agreement but not as part of the release.  Once again this provision was considered by the court in *Consol. Edison Co. v. U.G.I. Utils., Inc.*, 423 F.3d at 96.  The court noted that the Voluntary Cleanup Agreement indicated that Department would "not take any enforcement action under . . . CERCLA," but the Department promised to refrain from doing so only "to the extent that [the existing] contamination [at issue] is being addressed under the Agreement." *Id*. at 97.  According to the Second Circuit "[o]nce the cleanup is completed, the Department will apparently regain the rights relinquished in this section of the agreement, and grant Con Ed only the releases specified in the Release and Covenant Not to Sue.  This language, therefore, does not in any way suggest that Con Ed resolved its liability to the Department under CERCLA." *Id.*  The court concluded that these provisions supported its holding that the plaintiff in that case could not pursue a Section 113 claim for contribution because pursuant to the terms of the voluntary cleanup agreement at issue in that case plaintiff's CERLA liability had not been resolved.

Faced with a similar issue in connection with GTE/Sylvania's motion to dismiss Plaintiff's claims for contribution under Section 113 of CERCLA, Judge Azrack rejected GTE/Sylvania's contention that claims brought by the EPA had been released by a consent decree entered in 2015, because the 2015 Consent Decree released only claims brought by the State.  Judge Azrack concluded that "the Court does not find that the claims related to the EPA are included in the language of the July 30, 2015 Consent Decree, which only explicitly covered claims brought by New York State." 2020 Opinion at 10-13.  Here, the undersigned cannot conclude that CERCLA claims were included within the claims covered by the 2003 VCA where

14

the release expressly states "[t]he Department, . . . releases, covenants not to sue, and shall forbear from bringing any action, proceeding, or suit pursuant to the Environmental Conservation Law, the NL [Navigation Law] or the State Finance Law" without mention of CERCLA claims or any federal liability whatsoever.

Thus, in accordance with *Territory of Guam v. United States*, 141 S. Ct. at 1611 and *Consol. Edison Co. v. U.G.I. Utils., Inc*. 423 F.3d at 97 the release in question here could not have triggered Section 113 contribution because it did not resolve federal liability and therefore, it is respectfully recommended that the Federal Defendants' motion to dismiss be denied.[2]

### III. Declaratory Judgment

The Federal Defendants also argue that "[t]o the extent that Plaintiffs are found to have no viable claim(s) for any of the above-referenced costs under CERCLA Section 107, its declaratory judgment claims seeking the dismissed costs should also be dismissed." Def. Mem. at 20. Because the undersigned has recommended that the Federal Defendants' motion to dismiss GTE/Sylvania's Section 107 claim be denied, it is similarly recommended that the Federal Defendants' motion to dismiss GTE/Sylvania's declaratory judgment claim be denied.

### OBJECTIONS

A copy of this Report and Recommendation is being electronically served by the Court on the parties. Any objections to this Report and Recommendation must be filed with the Clerk of the Court with a courtesy copy to the undersigned within 14 days. Failure to file objections within this period waives the right to appeal the District Court's Order. See 28 U.S.C. § 636(b)(1); Fed

---

[2] In light of this Court's determination that, even assuming the enforceability of the 1999 Agreement and 2003 VCA, Section 113 is not triggered by the releases contained in those agreements it is unnecessary for the Court to consider GTE/Sylvania's argument that Section 113 was not triggered because (1) the 2003 VCP has been recognized as unlawful and agreements under it void; and (2) NYSDEC terminated the agreements with GTE/Sylvania before the cleanup was completed and any release could be provided.


R. Civ. P 72; *Mejia v. Roma Cleaning, Inc*., No. 17-3446, 2018 U.S. App. LEXIS 28235, 2018 WL 4847199, at *1 (2d Cir. Oct. 5, 2018) ("Plaintiff has waived any objections to the Magistrate's finding" by failing to timely object); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.,* 596 F.3d 84, 92 (2d Cir. 2010); *Beverly v. Walker,* 118 F.3d 900, 902 (2d Cir. 1997).

Dated: Central Islip, New York
July 27, 2022

_____/s/_____
ARLENE R. LINDSAY
United States Magistrate Judge